## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAIER US APPLIANCE SOLUTIONS, INC. D/B/A GE APPLIANCES, <br><br> Plaintiff, <br><br> v. <br><br> MIDEA AMERICA CORP., <br><br> Defendant. | Civil Action No.:  2-25-cv-3189 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

**GREENBERG TRAURIG, LLP**
Galit Kierkut, Esq.
Eric W. Moran, Esq.
Martin Fojas, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel. (973) 360-7900
Fax. (973) 301-8410
kierkutg@gtlaw.com
Eric.Moran@gtlaw.com
Martin.Fojas@gtlaw.com
*Attorneys for Plaintiff Haier US Appliance Solutions, Inc. d/b/a GE Appliances*

*On the Brief:*
  Galit Kierkut, Esq.
  Eric W. Moran, Esq.
  Martin Fojas, Esq.
  Karen Gillen, Esq.
  Samantha Varsalona, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ..................................................................................4

LEGAL STANDARD..........................................................................................4

ARGUMENT ......................................................................................................5

I.    GE APPLIANCES IS ENTITLED TO A TEMPORARY RESTRAINING ORDER. .................................................................................5

    A.    GE APPLIANCES HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS. ....................................................................5

        1.    GE Appliances Is Likely to Prevail Under the Defend Trade Secrets Act (DTSA)................................6

            (a)    GE Appliances' Confidential Technical and Business Information Constitutes Protectable Trade Secrets. ....................................6

            (b)    GE Appliances Took Reasonable Measures to Protect the GEA Trade Secrets. .........................9

            (c)    Midea's Actual and Threatened Misappropriation of GEA Trade Secrets Demonstrates Likelihood of Success on the Merits.................................................................10

        2.    GE Appliances is Likely to Prevail Under the New Jersey Trade Secrets Act................................................12

        3.    GE Appliances is Likely to Prevail on its Common Law Claim for Misappropriation of Trade Secrets. ......15

        4.    GE Appliances is Likely to Prevail on its Claim for Unfair Competition.........................................................16

        5.    GE Appliances is Likely to Prevail on its Claim For Tortious Interference.............................................18

    B.    GE APPLIANCES WILL BE IRREPARABLY HARMED BY THE DENIAL OF RELIEF...............................................................21

    C.    THE BALANCE OF EQUITIES FAVORS THE ENTRY OF INJUNCTIVE RELIEF. .....................................................................29

    D.    THE PUBLIC INTEREST FAVORS THE REQUESTED RESTRAINTS.................................................................................31

i

II.  GE APPLIANCES SHOULD BE EXCUSED FROM POSTING A BOND OR PERMITTED TO POST ONLY A NOMINAL AMOUNT AS SECURITY.................................................................32

III.  GE APPLIANCES IS ENTITLED TO EXPEDITED DISCOVERY. .........34

CONCLUSION .................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acteon, Inc. v. Harms*,
   2020 WL 6694411 (D.N.J. Nov. 6, 2020) ....................................................13, 31

*Better Packages, Inc. v. Zheng*,
   No. 05-4477, 2006 WL 1373055 (D.N.J. May 17, 2006) ...........................35, 36

*Bimbo Bakeries USA, Inc. v. Botticella*,
   613 F.3d 102 (3d Cir. 2010) ......................................................................21, 22

*C&J Colonial Realty Inc. v. Poughkeepsie Sav. Bank*,
   355 N.J. Super. 444 (App. Div. 2002)...............................................................18

*Chemetall U.S., Inc. v. LaFlamme*,
   2016 WL 885309 (D.N.J. Mar. 8, 2016) ................................................21, 25, 27

*Corp. Synergies Group, LLC v. Andrews*,
   No. 18-13381, 2019 WL 3780098, at *5 (D.N.J. 2019)................................9, 13

*Duffy v. Charles Schwab & Co.*,
   97 F. Supp. 2d 592, 601 (D.N.J. 2000) .............................................................16

*Ent. Technology, Corp. v. Walt Disney Imagineering*,
   No. 03-3546, 2003 WL 22519440 (E.D.Pa. October 2, 2003).........................36

*Ethicon Inc. v. Randall*,
   No. 17-2051, 2021 WL 2206106 (D.N.J. May 28, 2021) ..........14, 25, 27, 29, 30

*Fres-co Sys. USA, Inc. v. Hawkins*,
   690 F. App'x 72 (3d Cir. 2017) .................................................................10, 27

*Indo-Am. Cultural Soc'y v. Twp. of Edison*,
   930 F. Supp. 1062 (D.N.J. 1996)........................................................................6

*Jackson Hewitt Inc. v. Cline*,
   2015 WL 6687545 (D.N.J. Oct. 29, 2015) ................................................25, 29

*Jazz Pharmaceuticals, Inc. v. Synchrony Group, LLC*,
  343 F. Supp. 3d 434 (E.D. Pa. 2018)..................................................................27

*Kone Corp. v. Thyssenkrupp USA, Inc.*,
  No. 11-465, 2011 WL 4478477 (D. Del. Sept. 26, 2011) ...........................35, 36

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ...............................................................................30

*Lamorte Burns & Co.*,
  167 N.J 285 (2001) . ....................................................................................15, 18

*Marina Dist. Dev. Co. v. AC Ocean Walk LLC*,
  2021 U.S. Dist. LEXIS 74571 (D.N.J April 19, 2021).......................................20

*Mirashi v. Doe*,
  2025 U.S. Dist LEXIS 54141 (D.N.J. March 21, 2025)......................................33

*Murguly v. Locke*,
  No. 19-14471, 2020 WL 2401354 (D.N.J. May 11, 2020) .................................35

*Nat'l Auto Division, LLC v. Collector's Alliance, Inc.*,
  No. A-2997-15T1, 2017 WL 410241 (N.J. Super. Ct. App. Div.
  Jan. 31, 2017)......................................................................................................20

*Nat'l Reprographics, Inc. v. Strom*,
  621 F. Supp. 2d 204 (D.N.J. 2009).........................................................26, 27, 30

*Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*,
  219 N.J. Super. 158 (App. Div. 1987)..............................................14, 22, 23, 24

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982)....................................................................35, 36

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) .......................................................................6, 7, 13

*Ortho Pharm. Corp. v. Amgen, Inc.*,
  882 F.2d 806 (3d Cir. 1989) .................................................................................6

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) ...............................................................................20

*Par Pharm., Inc. v. QuVa Pharma, Inc.*,
   764 F. App'x 273 (3d Cir. 2019) ..........................................................6, 7, 9, 11

*Peoplestrategy, Inc. v. Lively Emp. Servs., Inc.*,
   2020 WL 7869214 (D.N.J. Aug. 28, 2020) ......................................................32

*Platinum Mgmt., Inc. v. Dahms*,
   285 N.J. Super. 274 (Law Div. 1995)..........................................................15, 20

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ........................................................4, 5, 6, 29

*Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*,
   No. 18-00694, 2019 WL 2067551, at *9–10 (D.N.J. May 10, 2019) ...............19

*Sunbelt Rentals, Inc. v. Love*,
   No. 20-17611, 2021 WL 82370 (D.N.J. Jan. 11, 2021) ..............................11, 14

*Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners, LLC*,
   No. 13-4255, 2013 WL 4080648 (D.N.J. Aug. 13, 2013)................................35

*Temple Univ. v. White*,
   941 F.2d 201 (3d Cir. 1991) ..............................................................33

*Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.*,
   No. 23-931, 2023 WL 3570583 (D. Del. May 19, 2023).................................35

*Zambelli Fireworks Mfg Co. v. Wood*,
   592 F.3d 412 (3d Cir. 2010) ..............................................................33

**Statutes**

18 U.S.C. § 1836(b)(3)(A).................................................................10

18 U.S.C. § 1836(b)(3)(A)(i) ............................................................6, 10

18 U.S.C. § 1839(3) ........................................................................7

18 U.S.C. § 1839(3)(A).....................................................................9

Defend Trade Secrets Act .......................................... 3, 5, 6, 7, 9, 10, 11, 12, 15, 16

N.J.S.A. 56:15-2.........................................................................12, 13

New Jersey Trade Secrets Act ........................................................3, 5, 12, 13, 15, 16

Pennsylvania Uniform Trade Secrets Act.............................................................21

**Other Authorities**

Fed. R. Civ. Proc. 65(b) ......................................................................................4

Fed. R. Civ. Proc. 65(c) ....................................................................................32

## PRELIMINARY STATEMENT

Plaintiff Haier U.S. Appliance Solutions, Inc. d/b/a GE Appliances ("GE Appliances" or the "Company"), seeks emergency and preliminary injunctive relief to prevent its direct competitor, Midea America Corp. ("Midea"), from exploiting GE Appliances' proprietary, confidential, and trade secret information ("GEA Trade Secrets") to which it has recently obtained access by hiring away several of GE Appliances' core engineering personnel. Over the last three months, Midea actively recruited and then hired six of GE Appliances' most knowledgeable and strategically positioned engineers and product leaders (the "Targeted Employees"), ultimately poaching them from GE Appliances' dishwasher, laundry, refrigeration, and cooking divisions to serve in comparable roles at Midea.

Midea's gambit is to establish and rapidly expand its new United States-based research and development facility (announced last year) on the back of GE Appliances by staffing its new facility in large part with former GE Appliances' engineers who possess GEA Trade Secrets and leveraging that confidential information to accelerate Midea's competitive footprint. These hires were not coincidental. The Targeted Employees were presumably targeted for their specialized knowledge and access to GEA Trade Secrets, and then placed in roles involving the same product categories as their prior roles at GE Appliances at Midea where they will inevitably use and disclose these GEA Trade Secrets.

1

The Targeted Employees did not merely have access to trade secret-protected innovations at GE Appliances; secret innovations were their job. Each received years of specialized training from GE Appliances and were key to developing the GEA Trade Secrets, such as pre-commercial product development, invention disclosures, regulatory strategies, field safety monitoring, and supplier cost structures. They held critical roles on confidential, cross-functional teams and were trusted with the Company's most sensitive intellectual property, such as pre-patent innovations, proprietary energy-efficiency standards, competitive benchmarking analyses, and regulatory matters. Even unintentional disclosure of this information would cause serious competitive harm.

GE Appliances has at all times guarded the secrecy of its GEA Trade Secrets, including, without limitation, by requiring each Targeted Employee to sign a binding Employee Innovation and Proprietary Information Agreement ("EIPIA"). GE Appliances also sought written assurances from Midea that the Targeted Employees were not employed in positions where they inevitably must use and disclose GEA Trade Secrets, that Midea would ensure that it could not access or use GEA Trade Secrets, and that Midea had internal procedures in place to monitor and prevent the Targeted Employees from using or disclosing GEA Trade Secrets. On April 12, 2025, Midea said that they were considering such requests, but as of this filing, they have yet to provide any such information or any meaningful assurances.

Midea's poaching of the Targeted Employees and misappropriation of the GEA Trade Secrets clearly violates the Defend Trade Secrets Act ("DTSA") and the New Jersey Trade Secrets Act ("NJTSA"), as well as constitutes common-law tortious interference, misappropriation, and unfair competition. As discussed below, GE Appliances is likely to prevail on the merits of each of these claims and has demonstrated a substantial risk of immediate and irreparable harm that cannot be compensated through monetary relief alone – such as loss of competitive advantage and first-to-market benefits; damage to intellectual property rights; loss of the benefits of its research and development and engineering innovations; and harm to GE Appliances' brand identity and reputation for innovation in the consumer market.

GE Appliances is not seeking to prevent lawful competition. It is not asking the Court to enjoin the Targeted Employees from working in the industry or even at Midea. The relief sought is limited to preserving the status quo—specifically, to prevent the use or disclosure of GE Appliances' confidential and proprietary information while expedited discovery is conducted. If that discovery confirms that the Targeted Employees are serving in overlapping functions and are improperly using or disclosing GEA Trade Secrets, GE Appliances would seek narrowly tailored additional relief based on the evidence.

3

## STATEMENT OF FACTS

GE Appliances respectfully refers to, and hereby incorporates by reference, the facts set forth in its Verified Complaint ("Compl.") and the exhibits attached thereto.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) allows a litigant to petition a court for the issuance of a temporary restraining order against a party whose imminent conduct will cause an immediate and irreparable injury, loss, or damage to the movant. *See* Fed. R. Civ. P. 65(b). The standard for granting either a temporary restraining order or preliminary injunction is the same. It requires a movant to demonstrate: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm in the absence of an injunction; (3) that this harm would exceed harm to the opposing party; and (4) that the public interest favors such relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

As demonstrated below, GE Appliances satisfies each Rule 65 standard. GE Appliances has a strong likelihood of success on the merits of its claims and, absent an immediate TRO, it will suffer immediate irreparable harm if Midea uses and continues to use GEA Trade Secrets and confidential information to its benefit. Further, the relative hardships tip decidedly in favor of granting injunctive relief because the requested relief is tailored to protecting trade secrets and confidential

4

information and does not unduly impinge on Midea's ability to employ the Targeted Employees—just not in positions that would require their use and disclosure GE Appliances' secrets. What is more, GE Appliances is entitled to relief for the independent reason that there exists a threatened use of its trade secrets, which is proscribed under the Federal Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. § 1836(b)(3)(A) (DTSA allows a court to grant an injunction "to prevent any actual or threatened misappropriation"). Finally, limited expedited discovery is appropriate to investigate Midea's conduct and best position the parties and the Court to address the preliminary injunction motion.

## ARGUMENT

I. **GE APPLIANCES IS ENTITLED TO A TEMPORARY RESTRAINING ORDER.**

    A. **GE APPLIANCES HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS.**

GE Appliances is likely to succeed on each of its claims against Midea: (1) violation of the DTSA; (2) tortious interference with contract and prospective economic advantage; (3) violation of the NJTSA; (4) common law misappropriation of trade secrets; and (5) unfair competition. "A likelihood of success on the merits requires 'a showing significantly better than negligible but not necessarily more likely than not.'" *Reilly*, 858 F.3d at 179 (citations omitted).

At this early juncture, GE Appliances need only establish that there is a "reasonable probability of eventual success in the litigation." *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812-13 (3d Cir. 1989). Injunctive relief is warranted if GE Appliances is likely to prevail on the merits of any one of its claims, *see Indo-Am. Cultural Soc'y v. Twp. of Edison*, 930 F. Supp. 1062, 1069 (D.N.J. 1996), and the greater the severity of the threatened harm, the less a plaintiff must be able to show to warrant preliminary injunctive relief. *See Reilly*, 858 F.3d at 178.

### 1. GE Appliances Is Likely to Prevail Under the Defend Trade Secrets Act (DTSA).

The DTSA authorizes courts to "grant an injunction to prevent any actual or threatened misappropriation," including situations where the use or disclosure of trade secrets is not yet confirmed but poses an imminent risk. 18 U.S.C. § 1836(b)(3)(A)(i). To prevail under the DTSA, a plaintiff must establish: (1) the existence of a trade secret; (2) that the trade secret was subject to reasonable measures to maintain its secrecy; and (3) that the trade secret has been misappropriated or is threatened to be misappropriated. *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). GE Appliances satisfies each element.

### (a)    GE Appliances' Confidential Technical and Business Information Constitutes Protectable Trade Secrets.

The GEA Trade Secrets at issue include non-public invention disclosures; pre-

6

patent product development and innovations; processes, methods, means, and standards used in internal innovation programs; research and development for new product designs; development and management of intellectual property; and algorithms and evaluation procedures for product testing—all of which are protected under the DTSA's broad statutory definition. *See* Compl. ¶ 32; *see also* 18 U.S.C. § 1839(3). Courts consistently recognize that this type of internal, competitively sensitive product and process information, technical processes, product development methods, and internal formulation or strategy documents—like those at issue here— are protectable trade secrets under the DTSA. *See, e.g.*, *Par Pharm., Inc.*, 764 F. App'x at 278-79 (DTSA claim may be based upon former employees misappropriating proprietary manufacturing processes and transferring them to a competitor); *Oakwood Labs LLC*, 999 F.3d at 907 (DTSA claim may be based upon allegations concerning misappropriation of internal development methods, testing protocols, and regulatory strategies).

The GEA Trade Secrets clearly satisfy this standard. The Complaint alleges that each of the six Targeted Employees regularly accessed, used, and in many cases helped develop GEA Trade Secrets, spanning GE Appliances' core engineering categories:  cooking, dishwashing, refrigeration, and laundry. *See* Compl. ¶¶ 32-34, 36-41, 48-54, 58-64, 68-74, 77-81, 84-87. These trade secrets include unreleased product designs, proprietary algorithms, internal benchmarking processes, pre-

market innovations, and safety compliance strategies—none of which are publicly available, and all of which were developed through years of internal investment and hold significant competitive value. *Id*.

The Complaint alleges that the Targeted Employees collectively developed proprietary energy standard responses and evaluated confidential pre-patent innovations in cooking, led the patent evaluation board for dishwashers and oversaw the development of confidential algorithms and system designs, engaged in sensitive cost-optimization initiatives, submitted confidential inventions, and worked on algorithmic development for washers and refrigeration. Compl. ¶¶ 32-89. The Complaint further alleges that GE Appliances entrusted its employees with some of the Company's most sensitive technical and regulatory information. For example, Kratzsch had direct access to confidential communications between GE Appliances and the U.S. Consumer Product Safety Commission. Compl. ¶¶ 77-80. Separately, Zhuo worked with proprietary algorithms, cost data, and internal product testing protocols, while Allgeier led initiatives involving confidential refrigeration re-designs. Compl. ¶¶ 51, 86.

Each of these individuals was thus deeply embedded in GE Appliances' innovation pipeline and both developed and had access to GEA Trade Secrets of significant competitive value. GEA Trade Secrets derive their economic value

precisely from their secrecy. Were they to be disclosed or used by a competitor like Midea, GE Appliances would suffer immediate and irreparable competitive harm.

### (b)    GE Appliances Took Reasonable Measures to Protect the GEA Trade Secrets.

GE Appliances closely guarded its GEA Trade Secrets and otherwise took "reasonable measures" to maintain their secrecy as required by the DTSA. 18 U.S.C. § 1839(3)(A); *see Par Pharm., Inc.*, 764 F. App'x at 278 (DTSA requires claimants to demonstrate "the existence of a trade secret . . . that the owner has taken reasonable measures to keep secret . . . ."). The Third Circuit has held that "non-disclosure agreements and appropriate facility security measures" constitute reasonable efforts to maintain secrecy under the DTSA. *See Par Pharm., Inc.*, 764 F. App'x at 278. Similarly, this Court has found that network restrictions and requiring employees to return confidential information at separation would constitute reasonable efforts. *Peoplestrategy, Inc. v. Lively Emp. Servs., Inc.*, No. 20-02640, 2020 WL 7869214, at *5 (D.N.J. Aug. 28, 2020). Neither the DTSA nor courts in this Circuit require perfect secrecy or extraordinary measures. Rather, the standard is one of reasonableness under the circumstances. *See Corp. Synergies Group, LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *5 (D.N.J. 2019).

GE Appliances maintains a comprehensive confidentiality regime satisfying DTSA standards: employees are required to execute an EIPIA as a condition of employment, affirming their obligation not to use or disclose sensitive information

9

except as required by their duties. *See* Compl. ¶¶ 14, 26-27, 29-31, 34. GE Appliances also implemented a document classification system—the Appliances Data & Document Classification Guidelines—to alert employees to the sensitivity of and access limitations for various classes of confidential information. *Id.* ¶ 27, Ex. B. Access to confidential files was further restricted through secure internal systems, network security measures, and role-based permissions. *Id.* ¶ 29. Employees received training on identifying and safeguarding trade secrets and confidential information. *Id.* ¶ 28. Upon departure, employees were further required to sign a Reminder of Continuing Confidentiality and Intellectual Property Obligations ("Reminder of Obligations"), confirming their ongoing duty not to disclose the Company's confidential material. *Id.* ¶¶ 31, 35; Exs. D, F, H, I, K. These constitute reasonable measures under the DTSA.

> **(c)    Midea's Actual and Threatened Misappropriation of GEA Trade Secrets Demonstrates Likelihood of Success on the Merits.**

The DTSA permits a court to enjoin either (1) actual or (2) threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A). *See Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017) (Under the DTSA, "misappropriation of trade secrets need not have already occurred to warrant injunctive relief; threatened misappropriation is sufficient") (citing 18 U.S.C. § 1836(b)(3)(A)(i)).

GE Appliances has established that, over the last three months, Midea has engaged in a raiding campaign of GE Appliances' key personnel, targeting technical experts with deep knowledge of GEA Trade Secrets for the purpose of misappropriating such information and accelerating its expansion of its new research and development facility. Compl. ¶¶ 1, 5-13, 21, 91-92. If there were any doubt as to Midea's conduct, Midea has refused to confirm what role the Targeted Employees will play at Midea and failed to provide meaningful written assurances that it is taking steps to prevent the disclosure and use of GEA Trade Secrets to Midea's competitive advantage. *Id.* ¶¶ 15-16, 90-100.

This Circuit has consistently recognized that a credible threat of misappropriation arising from employment with a direct competitor is sufficient to warrant injunctive relief under the DTSA. *See Par Pharm., Inc.*, 764 F. App'x at 275-77, 279-80 (affirming preliminary injunction under the DTSA where senior executives took confidential manufacturing procedures and formulation data to a direct competitor, and holding that release of the rival product would cause irreparable harm through lost future sales, reputational damage, and reduced attractiveness to investors); *Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *26-27 (D.N.J. Jan. 11, 2021) (granting preliminary injunction under the DTSA and holding that irreparable harm was likely based on the "substantial likelihood" of inevitable disclosure, the overlap in job responsibilities, and the

11

court's finding that the employee's testimony denying use of the information lacked credibility and "gave little confidence" that the secrets would not be used).

Third Circuit precedent is clear: where a movant demonstrates overlapping roles, access to confidential information, and the absence of meaningful safeguards, injunctive relief is appropriate to prevent threatened misappropriation under the DTSA. GE Appliances has made precisely that showing here. It alleges that Midea, a direct competitor, hired six employees with deep knowledge of GEA Trade Secrets, including confidential engineering and product development efforts, placed them in similar roles at and refused to implement any significant protective measures. Compl. ¶¶ 5-6, 8-10, 32, 36-89, 90-100. This substantial risk of misappropriation justifies preliminary injunctive relief.

### 2. GE Appliances is Likely to Prevail Under the New Jersey Trade Secrets Act.

GE Appliances is also likely to succeed on the merits of its claim under the NJTSA, N.J.S.A. 56:15-1 *et seq*. The NJTSA defines a trade secret as information that: (1) derives independent economic value from not being generally known or readily ascertainable by others who can obtain value from its use or disclosure; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. N.J.S.A. 56:15-2. Misappropriation means:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:

(a) used improper means to acquire knowledge of the trade secret; or

(b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or

(c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J.S.A. 56:15-2.

Courts applying the NJTSA have recognized that technical designs, cost-reduction strategies, product innovations, and non-public compliance protocols—such as those at issue here and discussed above—fall squarely within the scope of protectable trade secrets. *See Oakwood Labs., LLC*, 999 F.3d at 907, n.11 (affirming protectability of confidential pharmaceutical development methods under NJTSA).

Under the NJTSA, misappropriation may be shown not only through actual use or disclosure, but also through a likelihood of inevitable disclosure when an employee joins a direct competitor in a substantially similar role. As this Court explained in *Acteon, Inc. v. Harms*, "[u]nder the inevitable disclosure doctrine, 'an employer need not establish that its former employee has actually used or disclosed trade secrets. Rather, an employer may demonstrate that there is a sufficient

13

likelihood of inevitable disclosure of its trade secrets to a competitor.'" No. 20-14851, 2020 WL 6694411, at *9 (D.N.J. Nov. 6, 2020) (quoting *Corp. Synergies Group, LLC v. Andrews*, 2019 WL 3780098, at *7 n.10 (D.N.J. 2019)). *See also Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158, 161-62 (App. Div. 1987) (injunction warranted where employee had deep knowledge of development strategy and assumed comparable role at competitor); *Ethicon Inc. v. Randall*, No. 17-2051, 2021 WL 2206106, at *9-10 (D.N.J. May 28, 2021) (granting temporary restraining order where employee with knowledge of confidential research and development strategies assumed a similar role at a competitor, creating risk of misappropriation and irreparable harm); *Sunbelt Rentals, Inc.,* 2021 WL 82370, at *25-26 (D.N.J. Jan. 11, 2021) (preliminary injunction issued under the inevitable disclosure doctrine where former employee with access to confidential national strategy assumed similar role at competitor).

Here, the record supports a strong inference of inevitable disclosure. Each of the six departed employees moved to Midea in positions that appear, from publicly available job titles and LinkedIn profiles, to be substantially similar to the technical and strategic roles they held at GE Appliances. *See* Compl., Exs. C, E, G, J, L, M. Midea has refused to disclose job descriptions, confirm whether any meaningful confidentiality safeguards are in place, or provide attested written assurances that GEA Trade Secrets are not being used—despite multiple requests. Compl., ¶¶ 90-

14

100.   The most recently recruited employee, James Armstrong, has also refused to reaffirm his agreement of Reminder of Obligations, which certifies that the departing employee signed the EIPIA, "read and understood" the EIPIA, and promised to abide by its terms. *Id.* ¶¶ 31, 43-46.

Given the timing of the resignations, the overlapping subject matter of the employees' work, and the lack of any discernable protective measures from Midea, GE Appliances faces a substantial threat that its trade secrets will be disclosed or used to its competitive detriment. The DTSA does not require GE Appliances to wait for actual harm to materialize. The clear risk of inevitable disclosure justifies immediate injunctive relief.

### 3. GE Appliances is Likely to Prevail on its Common Law Claim for Misappropriation of Trade Secrets.

In addition to its statutory claims under the DTSA and NJTSA, GE Appliances is likely to succeed on its common-law claims for misappropriation of trade secrets. New Jersey common law protects against the unauthorized acquisition, use, or disclosure of trade secrets. The information at issue here meets this definition. New Jersey courts have consistently held that similar categories of confidential business materials meet the definition of a trade secret. *See Platinum Mgmt., Inc.*, 285 N.J. Super. at 295-96 (recognizing that pricing structures, merchandising plans, and marketing strategies may be protectable as trade secrets or confidential business information under New Jersey law); *Lamorte Burns & Co.*, 167 N.J. at 301 (holding

15

that client-specific claim file information—including contact details, injury data, and case status—was legally protectable as confidential and proprietary).

The elements of common law misappropriation mirror those under the DTSA and NJTSA: a trade secret, reasonable measures to maintain its secrecy, and unauthorized acquisition or use in a manner contrary to the plaintiff's interests.

As discussed above, GE Appliances has established that its materials are legally protectable as trade secrets, that it took reasonable steps to safeguard them, and that the Targeted Employees' employment at Midea presents a substantial and imminent risk of misappropriation. Accordingly, GE Appliances is entitled to injunctive relief under common law, independent of its statutory claims.

### 4. GE Appliances is Likely to Prevail on its Claim for Unfair Competition.

Lastly, GE Appliances is also likely to succeed on its claim for unfair competition under New Jersey law. The doctrine of unfair competition is a broad and flexible remedy that prohibits unjust or improper commercial conduct, particularly where a competitor uses another's confidential information, goodwill, or business methods to gain an unfair advantage in the marketplace.

The doctrine of unfair competition under New Jersey law is not limited to trademark or name appropriation; it extends to broader forms of commercial misconduct, including the misappropriation of confidential information and the unauthorized exploitation of another company's goodwill or business methods. *See*

16

*Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 601 (D.N.J. 2000) (recognizing that under New Jersey law, unfair competition extends beyond trademark misuse to include misappropriation of confidential information and breaches of commercial trust).

Here, GE Appliances alleges that Midea orchestrated a coordinated effort to appropriate GE Appliances' confidential knowledge by recruiting and hiring six senior engineers, all of whom had access to GE Appliances' most sensitive proprietary information. *See* Compl. ¶¶ 5-11, 32, 36-89. Moreover, GE Appliances advised Midea of the Targeted Employees' ongoing confidentiality obligations under executed EIPIAs and sought signed representations that its trade secrets would not be accessed or used. *See* Compl. ¶¶ 90-100. Midea declined to provide these representations. *Id*. This conduct—recruiting and immediately deploying GE Appliances' former employees into overlapping roles while failing to provide signed representations that GEA Trade Secrets would not be accessed or used—supports a strong inference that Midea's intent was to benefit from GE Appliances' institutional knowledge without undertaking the expense or effort of independent development.

Such conduct falls squarely within the unfair competition doctrine. Accordingly, GE Appliances' allegations—rooted in Midea's deliberate lifting of personnel, failure to advise GE Appliances of any meaningful safeguards that it has implemented to prevent disclosure other than reportedly telling the employees not

17

to disclose, and refusal to even cause its employee to provide his signed acknowledgment to GE Appliances—are more than sufficient to support a claim of unfair competition under New Jersey law.

**5. GE Appliances is Likely to Prevail on its Claim for Tortious Interference.**

GE Appliances is likely to prevail on its tortious interference claim against Midea because Midea is demonstrably engaged in raiding / piracy of GE Appliances' employees for the purpose of misappropriating the GEA Trade Secrets and hurting GE Appliances' ability to use or capitalize on the GEA Trade Secrets developed by the Targeted Employees. A claim of tortious interference with contract or prospective economic advantage may be based upon allegations of employee piracy. New Jersey law does not permit Midea to interfere with GE Appliance's right to economic advantage from its employee relationships or its Trade Secrets through conduct that is dishonest, improper, or illegal. *See, e.g.*, *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 307 (2001).

To prevail on a claim of tortious interference in New Jersey, a plaintiff must show: (1) the plaintiff has a protected interest; (2) the defendant intentionally interfered with that protected interest without justification; (3) it is reasonably likely that the anticipated benefit from the protected interest would have been realized had it not been for the defendant's interference; and (4) the plaintiff has suffered

economic damage as a result. *See C&J Colonial Realty Inc. v. Poughkeepsie Sav. Bank*, 355 N.J. Super. 444, 478 (App. Div. 2002).

Midea knew that the Targeted Employees possessed a direct competitor's most sensitive information and deliberately recruited and hired these individuals into roles that are similar to those they held at GE Appliances. Compl., ¶¶ 7-13, 32, 67, 76, 83, 89. Midea's ploy went far beyond ordinary employee recruiting—it lifted the Targeted Employees from GE Appliances knowing (1) that the Targeted Employees occupied the highest level technical positions in their respective departments; (2) that the Targeted Employees regularly used and developed the GEA Trade Secrets ; (3) that the Targeted Employees were bound by the EIPIAs; and (4) that the Targeted Employees would fill positions at Midea in which they would inevitably use the GEA Trade Secrets for the benefit of Midea. *See* Compl. ¶¶ 5-11, 14, 36-89. Such conduct goes beyond lawful competition and constitutes actionable tortious interference. *See Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-00694, 2019 WL 2067551, at *9-10 (D.N.J. May 10, 2019) (tortious interference claim established where the defendant used the plaintiff's former employee to recruit plaintiff's employees in disregard of the employees' contractual agreements).

If there were any doubt that Midea's interference is and was intentional, Midea's lack of response to GE's requests for specific remedial assurances is clear

indication of its intent. *See* Compl. ¶¶ 90-100. Midea's refusal to provide even job descriptions for the employees, the Armstrong Certification, or a signed statement that Midea will not use GEA Trade Secrets in the face of clear notice of the Targeted Employees' knowledge of and access to the GEA Trade Secrets and of the EIPIAs, reflects a willful disregard for GE Appliances' rights and underscores the deliberate nature of Midea's interference. *See* Compl. ¶¶ 15-16, 90-100; *see also Nat'l Auto Division, LLC v. Collector's All., Inc.*, No. A-2997-15T1, 2017 WL 410241, at *4 (N.J. Super. Ct. App. Div. Jan. 31, 2017) (tortious interference claim lies where competitor allegedly raids employees, inducing breaches of contractual and confidentiality obligations, and used improper tactics to gain a competitive advantage); *Marina Dist. Dev. Co. v. AC Ocean Walk LLC,* 2021 U.S. Dist. LEXIS 74571, at *22-*23 (D.N.J April 19, 2021) (inducing at-will employees to breach post-employment obligations, misappropriate trade secrets, or deliver competitively sensitive information to a rival constitutes "wrongful" or "improper" conduct for purposes of a tortious interference claim); *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 295-308 (Law Div. 1995) (defendant liable for inducing employees to bring confidential customer information to a rival and solicit clients).

Accordingly, GE Appliances is likely to succeed on its claim for tortious interference against Midea.

20

**B.    GE APPLIANCES WILL BE IRREPARABLY HARMED BY THE DENIAL OF RELIEF.**

Irreparable harm exists where the plaintiff shows harm that cannot be adequately compensated by money damages alone. Courts in this Circuit routinely recognize that the loss of confidential business information, customer goodwill, or competitive position constitutes irreparable harm. *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"); *Chemetall U.S., Inc. v. LaFlamme*, 2016 WL 885309, at *16 (D.N.J. Mar. 8, 2016) (recognizing that loss of customer relationships can constitute irreparable harm).

GE Appliances seeks narrowly tailored, tiered relief to prevent immediate and irreparable harm. The Company is not seeking to categorically bar the Targeted Employees from working at Midea. Rather, GE Appliances seeks interim relief to prevent any use or disclosure of its confidential information while expedited discovery is conducted. If that discovery reveals what is suggested by some of the LinkedIn profiles, namely that the Targeted Employees are working in overlapping roles that would unavoidably implicate GEA Trade Secrets, GE Appliances will pursue its injunctive relief seeking to preclude such employees from working in such roles due to threatened misappropriation and inevitable disclosure. But at this stage, it asks only for immediate protections to preserve the status quo and safeguard against threatened disclosure.

Where, as here, an employee subject to non-disclosure obligations joins a competitor, courts recognize that the ongoing and inevitable breach of those obligations constitutes precisely the kind of irreparable harm that warrants preliminary relief. The Third Circuit's decision in *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010), applying the Pennsylvania Uniform Trade Secrets Act, confirms that a preliminary injunction is warranted where a departing executive's knowledge of confidential information would likely be used in a competing role. In *Bimbo*, the defendant was exposed to proprietary details regarding product formulas, manufacturing processes, cost structures, margin data, and strategic plans for future product launches—including products not yet released to the market. *Id*. at 106-08. The Third Circuit upheld a preliminary injunction enjoining Botticella from commencing employment at Hostess, finding a "substantial threat" or "sufficient likelihood" that Botticella would disclose confidential information in his new role at a competitor. *Id.* at 114-16. Like Botticella, the Targeted Employees have now assumed technical roles at Midea, a direct competitor, where they will necessarily draw on the know-how and strategy developed through years of confidential experience at GE Appliances. *See* Compl. ¶¶ 36-89.

The Appellate Division's decision in *Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158 (App. Div. 1987), is also directly on point. There,

the court affirmed a narrowly tailored preliminary injunction prohibiting a former employee from performing duties that would likely result in the inevitable disclosure of his former employer's trade secrets. *Id.* at 163. The defendant was "intimately associated with the development of many sophisticated, highly technical envelope adhesives, through expensive trial and error processes." *Id.* at 161. He had access to proprietary formulations and blending techniques, and his knowledge was so precise that he could "duplicate certain formulas from memory." *Id.* Although the raw materials were publicly available, the methods for combining them—and tailoring them to meet customer-specific performance criteria—were confidential and could not be reverse-engineered without access to National's internal know-how.

After resigning, Lauria accepted a position as "technical manager" for Adcon, a direct competitor. His new role encompassed quality control, raw material purchasing, manufacturing oversight, and technical service support—including for envelope adhesives. *Id.* at 161. National argued that even though only "5% of [his] time and services" would be devoted to envelope adhesives, the risk of disclosure remained acute. *Id.* at 161-62. The court agreed that Lauria's responsibilities would inevitably call upon his specialized knowledge to troubleshoot issues, service customer accounts, and evaluate formulations—functions that would almost certainly draw upon the trade secrets he developed while at National. *Id.* at 161-63. His "product know-how" would also allow Adcon to replicate the outcome of years

23

of technical development "without the necessity for the usual trial and error process. This of course, would result in substantial cost savings, with a consequent competitive advantage, to Adcon." *Id.* at 161. The court concluded there was a "sufficient likelihood of inevitable disclosure" and "consequent immediate and irreparable harm," warranting interlocutory relief. *Id.* at 162.

Crucially, the injunction did not bar Lauria from all employment at Adcon. It prohibited only those responsibilities "that 'in any way relate to or involve envelope adhesives,'" leaving him free to perform the remaining 95% of his job, which involved unrelated adhesive product lines. *Id.* at 159, 161-63. This precise, limited restriction exemplifies the type of equitable relief courts routinely grant where confidential information would inevitably be used in a new role.

The parallels here are even more striking. Where *National Starch* involved a single technically trained employee, Midea has recruited six senior engineers from GE Appliances and refuses to confirm that they have not employed them in like positions, working on the same product categories to compete directly against GE Appliances. *See* Compl. ¶¶ 8-16, 36-89, 90-100. Indeed, Midea's strategic targeting of those six technical experts presents *five times* the evidence of inevitable disclosure and resulting risk of irreparable harm than what the New Jersey Appellate Division determined justified the injunctive relief granted in that case.

Collectively, the Targeted Employees possess years of confidential experience, internal protocols, and institutional know-how across GE Appliances' innovation lifecycle. *Id.* ¶¶ 36-89. Just as Lauria's product expertise threatened to short-circuit Adcon's research and development timeline, Midea's acquisition of this highly specialized team gives it the ability to leapfrog its own innovation curve. The result is the same: a competitor obtaining insider knowledge that allows it to avoid costly experimentation and gain unfair advantage.

GE Appliances, like National, does not seek to bar these individuals from all employment. It asks only for the same narrowly tailored protection the court upheld in *National Starch*: to enjoin the Targeted Employees from performing overlapping job functions where the disclosure and use of trade secrets is not just a risk, but a near certainty. This principle is reinforced in *Ethicon, Inc. v. Randall*, where the court emphasized that threatened misuse of confidential information in a competing role supports a finding of irreparable harm, even absent direct evidence of disclosure. There, as here, the plaintiff argued that it would be "impossible for [the defendant] to perform his duties ... without a significant risk of using or disclosing [the plaintiff's] confidential information." 2021 WL 2206106, at *26. The court agreed, stating that "[t]he disclosure of confidential and proprietary information ... may be the basis for a finding of irreparable harm," and that "where a party is in possession of another party's confidential information and is poised to use or disclose such

25

information, there is a likelihood of irreparable harm." *Ethicon*, 2021 WL 2206106, at *26. As the court in *Ethicon* further explained, "an imminent possibility of disclosure of confidential information is sufficient to support a finding of irreparable harm." *Id.* at *26-27. *See also Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 229-30 (D.N.J. 2009) (concluding that the defendant employee's use of his former employer's (*i.e.*, the plaintiff) confidential information in his capacity for a new employer was potentially inevitable, though the defendant had not started working for the new employer, because: (1) the new employer was a direct competitor of the plaintiff; (2) the defendant significantly involved and participated in the plaintiff's strategic business decisions; and (3) the defendant knew the plaintiff's strategies for its New Jersey branches).

That is precisely the concern here. Each of the Targeted Employees spent years embedded within microenterprises performing GE Appliances' most confidential functions—engineering, compliance, product development, supplier, and cost modeling—and each now holds a technical position at Midea, GE Appliances' direct competitor. *See* Compl. ¶¶ 36-89. The nature of their roles at GE Appliances required them to internalize not only specific trade secrets but also proprietary frameworks, processes, and strategic know-how—the same kind of "sensitive product strategies both as to development and marketing" that courts have repeatedly recognized as justifying preliminary injunctive relief.

26

Given the overlap between their former duties and their new roles at Midea, there is, at minimum, an "imminent possibility" that GE Appliances' confidential information will be used or disclosed in ways that cannot be unwound—creating precisely the kind of irreparable harm recognized in *Ethicon* and related decisions. *See also Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017) (finding likelihood of irreparable harm where "substantial overlap (if not identity)" between the employee's former and new roles—"same role, same industry, and same geographic region"—supported inference that the employee would likely use confidential knowledge to the former employer's detriment). *Jazz Pharm., Inc. v. Synchrony Group, LLC*, 343 F. Supp. 3d 434,445-46 (E.D. Pa. 2018) (threat of misappropriation existed where vendor with access to plaintiff's proprietary research and other trade secrets began providing services to plaintiff's direct competitor and refused to provide assurances that plaintiff's information would be protected); *Strom*, 621 F. Supp. 2d at 229  (granting preliminary injunction and finding irreparable harm where a senior executive with "unfettered access to [the plaintiff's] business strategies" took a leadership role at a direct competitor; holding that use of confidential information was "potentially inevitable even in the absence of the underlying NRI documents" and emphasizing the existential threat posed by misappropriation of strategic plans and customer-specific pricing models, which "could potentially destroy NRI's business, built over 100 years"); *Chemetall U.S.,*

27

*Inc.*, 2016 WL 885309, at *16 (irreparable harm established where former senior sales manager joined competitor while in possession of proprietary technical knowledge developed over years).

The Targeted Employees were not off-the-shelf hires for GE Appliances, but rather were cultivated internally through years of investment, technical mentorship, and progressive exposure to confidential research and development processes. *See* Compl. ¶¶ 2-6, 32, 36-89. The Company invested significant time and resources training these individuals in proprietary development processes or systems, compliance protocols, pre-market benchmarking methods, and internal design frameworks—knowledge not available outside of GE Appliances. *Id.* ¶¶ 2-6, 9, 32, 38, 50-51, 60-63, 70-72, 79-80, 86. Midea's acquisition of this concentrated talent pool gives it an immediate and unfair advantage by granting access not just to individual know-how, but to the collective institutional memory and innovation priorities of its most direct competitor. The resulting loss is not merely personnel-based—it threatens the integrity of GE Appliances' product development pipeline and its competitive position in the market.

The Targeted Employees' responsibilities did not merely afford them "access" to GE Appliances' secret innovations—secret innovations were their job. The express language in each employee's EIPIA recognizes those special responsibilities by underscoring the risk of irreparable harm were the Company's secrets disclosed

28

to a third party. It states that breach "may cause irreparable injury to the Company which cannot be fully compensated by money," and entitles GE Appliances to injunctive relief. *See* Compl., Ex. A. This acknowledgment reinforces GE Appliances' showing of irreparable harm and reflects the parties' mutual understanding that any breach, particularly one involving confidential information, would result in non-compensable injury.

Absent interim relief, Midea will continue to benefit from employees who are inevitably positioned to use or disclose GE Appliances' confidential information. As alleged in the Complaint, GE Appliances is already suffering competitive harm from the loss of its trade secrets and the migration of sensitive institutional knowledge to a direct rival.

## C.   THE BALANCE OF EQUITIES FAVORS THE ENTRY OF INJUNCTIVE RELIEF.

Temporary and preliminary injunctive relief is designed to preserve the status quo while the parties litigate the merits. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) ("The purpose of a preliminary injunction is to preserve the status quo pending a final determination of the parties' rights.").

In balancing the hardships, the Court must ensure "the injunction does not harm the defendants more than denial of the injunction would harm the plaintiff." *Ethicon, Inc.*, 2021 WL 2206106, at *27 (quoting *Jackson Hewitt Inc. v. Cline*, No. 14-6931, 2015 WL 6687545, at *4 (D.N.J. Oct. 29, 2015)). In making this

29

assessment, courts analyze "whether the defendants will suffer irreparable harm if the preliminary injunction is granted," and "should not consider financial damages when deciding whether to grant an injunction." *Ethicon*, 2021 WL 2206106, at *27 (quoting *Strom*, 621 F. Supp. 2d at 230). Courts also routinely discount alleged hardship where "the injury a defendant might suffer if an injunction were imposed [is] brought . . . upon itself," such as by voluntarily leaving to join a competitor in breach of an agreement. *Ethicon*, 2021 WL 2206106, at *27 (citing *Strom*, 621 F. Supp. 2d at 230); *see also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 728-29 (3d Cir. 2004).

Here, GE Appliances seeks tiered, narrowly tailored relief that imposes no greater burden on Midea than preserving the status quo. GE Appliances is not asking the Court to enjoin the employment of the Targeted Employees outright, nor to disrupt Midea's business operations. Rather, it seeks an interim injunction that prohibits the use or disclosure of its confidential information while expedited discovery is conducted. If discovery shows that the employees' current roles create an unavoidable risk of misappropriation, GE Appliances will seek more specific relief. For now, it asks only for measures to ensure its trade secrets are protected while the facts are developed.

Moreover, the record makes clear that the Targeted Employees did not bring general knowledge, but role-specific insight acquired through years of participation

30

in GE Appliances' most confidential initiatives. Compl. ¶¶ 2-6, 32, 36-89.  Midea appears to have fast-tracked its competitive positioning by acquiring this concentrated internal knowledge. Enjoining any use of that information—pending further discovery—restores the competitive balance that existed before the hires occurred.

The burden on Midea is minimal. It can continue to operate and employ the Targeted Employees in non-overlapping roles, provided GE Appliances' information is not put at risk. GE Appliances, by contrast, has no adequate remedy if its trade secrets are used, disclosed, or even inadvertently leveraged. A preliminary injunction serves its intended purpose: maintaining the legal and competitive positions of the parties during the pendency of the action while facts are developed and the Court determines what, if any, further relief may be warranted.

## D.    THE PUBLIC INTEREST FAVORS THE REQUESTED RESTRAINTS.

There is no question that the public interest favors the entry of temporary restraints and a preliminary injunction where the misuse and appropriation of confidential and proprietary information and trade secrets is at issue.

The public interest is advanced by enforcing agreed-upon contractual safeguards, particularly those intended to protect an employer's confidential and proprietary information. *See Acteon, Inc. v. Harms*, 2020 WL 6694411, at *12 (D.N.J. Nov. 6, 2020) (recognizing that "[t]he public has an interest in upholding

31

reasonable, bargained-for provisions of contracts" and "in safeguarding an employer's confidential information") (internal quotation marks omitted). *See also Peoplestrategy, Inc.*, 2020 WL 7869214, at *9 (emphasizing "a clear interest in safeguarding fair commercial practices and in protecting employers from the theft or piracy of trade secrets, confidential information, or, more generally, knowledge and technique in which the employer may be said to have a proprietary interest," and noting that "[t]he public interest is also served by the enforcement of the reasonable terms of an employment contract") (internal quotations and citations omitted).

In sum, issuing temporary and preliminary injunctive relief in this case will serve not only to protect GE Appliances' legitimate business interests, but also to vindicate the broader public interest in maintaining the integrity of competitive business practices, enforcing contractual obligations, and preventing the unfair exploitation of confidential and proprietary information.

## II.    GE APPLIANCES SHOULD BE EXCUSED FROM POSTING A BOND OR PERMITTED TO POST ONLY A NOMINAL AMOUNT AS SECURITY.

Although Federal Rule of Civil Procedure 65(c) generally requires the moving party to "give[] security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," there is an exception to this general rule where, as here, "'complying with the preliminary injunction raises no risk of monetary loss to the defendant.'"

32

*Zambelli Fireworks Mfg Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). The Court thus has discretion to waive the posting of any bond or other form of security. *Id*. To determine whether the bond requirement should be waived, "the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991). "[T]he likelihood of success on the merits . . . tips in favor of a minimal bond or no bond at all." *Mirashi v. Doe*, 2025 U.S. Dist LEXIS 54141, at *13 (D.N.J. March 21, 2025).

In the alternative, the Court should permit GE Appliances to post a bond in a nominal amount, which it has broad discretion to do. A nominal bond is appropriate particularly where there is no evidence of any irreparable harm to the defendant due to the defendant's compliance with the injunction. *Neo Gen Screening, inc. v. TeleChem Int'l, Inc.*, 69 Fed. App'x 550, 557 (3d Cir. 2003).

Here, injunctive relief is required because, as set forth above, once the GEA Trade Secrets are lost to a competitor, they are lost forever, and the irreparable harm to GE Appliances is severe. On the other hand, it costs Midea nothing to avoid using or disclosing GEA Trade Secrets, or taking appropriate measures to ensure that the Targeted Employees are not employed in positions where they will inevitably use or disclose the GEA Trade Secrets – measures that Midea would be required to

33

implement irrespective of any Court order to avoid infringing the rights of GE Appliances in the GEA Trade Secrets.

Accordingly, the Court should waive the bond requirement in light of GE Appliances' strong likelihood of success on the merits and negligible harm to Midea to comply with the temporary and/or preliminary injunction sought in this application. To the extent that the Court does not waive the bond requirement, a nominal amount is appropriate in light of the negligible cost of compliance or risk of potential damages to Midea.

### III.   <u>GE APPLIANCES IS ENTITLED TO EXPEDITED DISCOVERY.</u>

GE Appliances seeks narrowly tailored, expedited discovery to assess the scope of misappropriation, confirm the technical roles being performed by the Targeted Employees at Midea, and determine the nature and extent of any ongoing use of GE Appliances' proprietary information. Given the time-sensitive nature of this action—and the overlap between the expedited discovery and the pending motion for a temporary restraining order and preliminary injunction—expedited relief is both necessary and appropriate.

District courts within the Third Circuit apply two distinct standards when evaluating motions for expedited discovery filed before a Rule 26(f) conference: the more stringent *Notaro* standard, which parallels the elements of preliminary injunctive relief, and the more flexible "good cause" or reasonableness standard,

34

which evaluates the scope and necessity of the discovery in context. *See Murguly v. Locke*, No. 19-14471, 2020 WL 2401354, at *1-2 (D.N.J. May 11, 2020) (recognizing and applying good cause standard while acknowledging both); *Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners, LLC*, No. 13-4255, 2013 WL 4080648, at *1-2 (D.N.J. Aug. 13, 2013); *Better Packages, Inc. v. Zheng*, No. 05-4477, 2006 WL 1373055, at *2-3 (D.N.J. May 17, 2006); *see also Woodford Eurasia Assets Ltd. v. Lottery.com, Inc.*, No. 23-931, 2023 WL 3570583, at *5 (D. Del. May 19, 2023) (noting split among district courts in the Third Circuit).

Under the *Notaro* standard—originally articulated in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982) in a preliminary injunction context—a party seeking expedited discovery must demonstrate: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* at 405.

More recently, courts have favored the more flexible good cause or reasonableness approach, particularly where expedited discovery is sought in connection with a preliminary injunction motion. *See Kone Corp.*, 2011 WL 4478477, at *5 (D. Del. Sept. 26, 2011) (rejecting *Notaro* as ill-suited where discovery is needed to establish likelihood of success on the merits).

35

As the *Better Packages* court explained, the good cause standard is "considerably more liberal than the *Notaro* standard." *Better Packages, Inc.*, 2006 WL 1373055, at *3. Under this standard, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Ent. Technology, Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *4 (E.D.Pa. October 2, 2003) (internal quotations and citations omitted). *See also Kone Corp.,* No. 11-465, 2011 WL 4478477, at *5 (D. Del. Sept. 26, 2011) (granting limited expedited discovery under good cause standard in context of pending preliminary injunction motion and noting that the Notaro framework can be circular where discovery is sought to prepare for a hearing on likelihood of success).

GE Appliances satisfies both standards. Under *Notaro*, it has demonstrated irreparable harm from the ongoing risk of trade secret disclosure; a strong likelihood of success on the merits; a clear connection between the targeted discovery and its showing of irreparable harm; and that any burden to Midea is far outweighed by the risk of further harm to GE Appliances if discovery is delayed. *See supra*.

GE Appliances also satisfies the good cause standard, which assesses the reasonableness of the request in light of the timing, scope, and need for early discovery. The requested discovery is narrowly tailored to the roles and responsibilities of the Targeted Employees, any documents or communications

36

reflecting GE Appliances' confidential information, and Midea's onboarding procedures and technical assignments.

Under either framework, the discovery sought here is limited, proportional, and necessary fairly to investigate Midea's conduct and best position the parties and the Court to address the preliminary injunction motion. The Court should grant expedited discovery to allow GE Appliances to fully develop the record in support of its claims and prepare for the injunction hearing.

## CONCLUSION

For the foregoing reasons, GE Appliances respectfully requests that the Court grant its motion in its entirety and issue a temporary restraining order as follows:

(a)    enjoining Midea and all parties acting in concert with Midea from using, disclosing, or disseminating GEA Trade Secrets that Midea obtained as a result of hiring the Targeted Employees;

In addition, and for the foregoing reasons, GE Appliances respectfully requests that the Court grant its motion for expedited discovery as follows:

(b)    requiring Midea to disclose the following information for each Targeted Employee: (1) title, position, and department with Midea; (2) start date at Midea; (3) specific job description and duties with Midea including specific projects each Targeted Employee has been working

37

on since joining Midea; (4) the supervisor's name and position and duties; and (5) company e-mail address with Midea,

(c)     requiring Midea to disclose all pre-hire communications with and the personnel file of each Targeted Employee,

(d)     requiring Midea to disclose the specific protections Midea has put into place to protect against disclosure or use of GEA Trade Secrets,

(e)     forensic review of the Targeted Employees' emails to determine whether GEA Trade Secrets have been shared,

(f)     depositions of the Targeted Employees and a representative of Midea to investigate the extent of overlap between their positions at GE Appliances and Midea.

Finally, on the return date of the Preliminary Injunction, GE Appliances will move for an order potentially including, depending on the outcome of the expedited discovery it obtains:

(g)     enjoining Midea and all parties acting in concert with Midea from employing or engaging any Targeted Employee in any specific role, position, or capacity in which such Targeted Employee will be likely to or inevitably have to use any GEA Trade Secrets;

(h)     requiring Midea to return to GE Appliances, all originals and copies of GEA Trade Secrets in its possession, custody or control; and,

38

(i)     causing any electronic copies of GEA Trade Secrets identified on Midea's computers, network, systems, online accounts, or any other electronic storage devices, media, or locations, including but not limited to cloud-based servers and accounts to be forensically removed.


Dated: April 24, 2025                          Respectfully submitted,


                                               **GREENBERG TRAURIG, LLP**
                                               *Attorneys for Plaintiff*


                                               /s/ *Galit Kierkut*
                                               Galit Kierkut
                                               500 Campus Drive, Suite 400
                                               Florham Park, NJ 07869
                                               Phone: (973) 360-7900
                                               Email: kierkutg@gtlaw.com