Brian P. Golger (348742021)
Philip M. Bowman (*pro hac vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Email: bgolger@cooley.com
          pbowman@cooley.com

Mark F. Lambert (*pro hac vice*)
Amanda A. Main (*pro hac vice*)
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Email: mlambert@cooley.com
          amain@cooley.com

William K. Pao (*pro hac vice*)
Cooley LLP
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Email: wpao@cooley.com

*Attorneys for Defendant Midea America Corp.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAIER US APPLIANCE SOLUTIONS, INC. D/B/A/ GE APPLIANCES,<br><br>               Plaintiff,<br><br>    v.<br><br>MIDEA AMERICA CORP.,<br><br>               Defendant. | Case No. 2:25-CV-03189-MCA-JRA<br><br>**DEFENDANT MIDEA AMERICA CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Motion Day: June 16, 2025<br>Judge: Hon. Madeline Cox Arleo<br><br>**ORAL ARGUMENT REQUESTED** |

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND ............................................................................3

LEGAL STANDARD .....................................................................................10

ARGUMENT ..................................................................................................10

   I.   THE COMPLAINT FAILS TO STATE A FEDERAL-LAW
CLAIM UNDER THE DEFEND TRADE SECRETS ACT.............................11

     A.   The Complaint fails to allege the existence of a trade secret. ...............12

     B.   The Complaint fails to allege misappropriation. ...................................16

   II.   THE STATE-LAW CLAIMS ARE BROUGHT UNDER
THE WRONG LAW AND, REGARDLESS, FAIL .........................................24

     A.   Kentucky law governs this dispute.........................................................24

     B.   Under the laws of both Kentucky and New Jersey, GEA's
conclusory Complaint fails to state a claim. ...................................................31

     C.   State-Law Misappropriation Claims (Counts 2 & 4) ............................32

     D.   Tortious Interference (Count 3)..............................................................34

     E.   Unfair Competition (Count 5) ................................................................37

CONCLUSION ...............................................................................................40

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hamm*,
2020 WL 1431953 (E.D. Ky. Mar. 23, 2020) ....................................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................10, 21, 24

*Auto Channel, Inc. v. Speedvision Network, LLC*,
144 F. Supp. 2d 784 (W.D. Ky. 2001)..........................................26, 27, 32

*Avataa USA, LLC v. Yaminsky*,
2025 WL 892716 (D.N.J. Mar. 24, 2025) .........................................................15

*Avtec Indus., Inc. v. Sony Corp. of America*,
500 A.2d 712 (N.J. Super. Ct. App. Div. 1985) ................................................36

*AWP, Inc. v. Safe Zone Servs., LLC*,
2022 WL 2910023 (W.D. Ky. July 22, 2022) ....................................................28

*Beta Pharma, Inc. v. InventisBio (Shanghai) Co., Ltd.*,
2022 WL 17547265 (D.N.J. Dec. 8, 2022)........................................12, 16, 17, 22

*Brusco v. Harleysville Ins. Co.*,
2014 WL 2916716 (D.N.J. June 26, 2014).........................................................8

*Cardionet, Inc. v. Medi-Lynx Cardiac Monitoring, LLC*,
2016 WL 4445749 (D.N.J. Aug. 22, 2016) ........................................................36

*Cargill Glob. Trading v. Applied Dev. Co.*,
706 F. Supp. 2d 563 (D.N.J. 2010)....................................................................35

*CleanFish, LLC v. Sims*,
2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ...................................................23

*Cmty. Hosp. Grp., Inc. v. More*,
869 A.2d 884 (N.J. 2005) ....................................................................................23

*Cmty. Ties of America, Inc. v. NDT Care Servs., LLC*,
2015 WL 520960 (W.D. Ky. Feb. 9, 2015)........................................................38

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Cotiviti, Inc. v. Deagle*,
501 F. Supp. 3d 243 (S.D.N.Y. 2020) ................................................................32

*DiGiorgio Corp. v. Mendez & Co.*,
230 F. Supp. 2d 552 (D.N.J. 2002) .....................................................................37

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
2014 WL 1767471 (D.N.J. May 1, 2014) ....................................................14, 38

*Donovan v. W.R. Berkley Corp.*,
566 F. Supp. 3d 224 (D.N.J. 2021) .........................................................26, 28, 29

*E.R. Squibb & Sons, Inc. v. Hollister, Inc.*,
1991 WL 15296 (D.N.J. Feb. 5, 1991) .......................................................22, 33

*GMH Cap. Partners v. Fitts*,
2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) ...............................................15, 22

*Greenstar Techs., LLC v. Gouru*,
2025 WL 1311397 (D.N.J. May 5, 2025)..............................................12, 13, 14

*Harish v. Rubinstein*,
602 F. Supp. 3d 696 (D.N.J. 2022) .....................................................................39

*Henessey Food Consulting LLC v. Prinova Sols., LLC*,
2024 WL 4291312 (N.D.N.Y. Sept. 24, 2024).....................................................32

*IDEXX Lab'ys, Inc. v. Bilbrough*,
2022 WL 3042966 (D. Me. Aug. 2, 2022) .........................................................22

*Invesco Institutional (N.A.), Inc. v. Johnson*,
500 F. Supp. 2d 701 (W.D. Ky. 2007)..................................................................28

*Jevremovic v. Courville*,
2024 WL 4024144 (D.N.J. Aug. 30, 2024) .........................................38, 39, 40

*Jiaherb, Inc. v. MTC Indus., Inc.*,
2023 WL 3249822 (D.N.J. May 4, 2023).........................................12, 16, 24, 33

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Jurista v. Amerinox Processing, Inc.*,
492 B.R. 707 (D.N.J. 2013) ................................................................................33

*Koger, Inc. v. Klco*,
2009 WL 905061 (D.N.J. Mar. 9, 2009) ..........................................................34

*Lantech.com, LLC v. Yarbrough*,
2006 WL 3323222 (W.D. Ky. Nov. 14, 2006) ..................................................23

*Lento v. Altman*,
2023 WL 4232158 (D.N.J. June 27, 2023) ........................................................37

*Lewis v. Knight*,
2022 WL 2121517 (E.D. Ky. June 13, 2022) .....................................................27

*Lithero, LLC v. AstraZeneca Pharms. LP*,
2020 WL 4699041 (D. Del. Aug. 13, 2020) ......................................................14

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
2013 WL 5574626 (D.N.J. Oct. 9, 2013) ..........................................................25

*Maniscalco v. Brother Int'l (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013) ..............................................................................25

*Marina Distr. Dev. Co. v. AC Ocean Walk, LLC*,
2020 WL 5502160 (D. Nev. Sept. 10, 2020) .....................................................34

*Micro Image Techs., Inc. v. Olympus Corp. of the Americas*,
2022 WL 17132156 (D.N.J. Nov. 22, 2022) ...............................................35, 36

*Microsoft Corp. v. Softicle.com*,
2018 WL 10150945 (D.N.J. Apr. 30, 2018) ......................................................10

*Mylan Inc. v. SmithKline Beecham Corp.*,
723 F.3d 413 (3d Cir. 2013) ..............................................................................37

*NXIVM Corp. v. Estate of Sutton*,
2013 WL 6795217 (D.N.J. Dec. 19, 2013) ........................................................31

iv

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) ...............................................................................20

*Osteotech, Inc. v. Biologic, LLC*,
  2008 WL 686318 (D.N.J. Mar. 7, 2008) ..................................................28, 29, 33

*Paramount Residential Mortg. Grp., Inc. v. Nationwide Mortg.
  Bankers, Inc.*,
  2024 WL 2764821 (D.N.J. May 30, 2024)...................................................39, 40

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ................................................................................8

*Perimeter Sols. L.P. v. Fortress N. Am., LLC*,
  2025 WL 553288 (E.D. Cal. Feb. 19, 2025) ...............................................20, 21

*PetroChoice Holdings, Inc. v. Orobono*,
  2022 WL 138008 (E.D. Pa. Jan. 14, 2022)...........................................................33

*Pittsburgh Logistics Sys. Inc. v. LaserShip, Inc.*,
  2019 WL 2443035 (W.D. Pa. June 12, 2019) .....................................................21

*Quintiles IMS Inc. v. Veeva Sys. Inc.*,
  2017 WL 4842377 (D.N.J. Oct. 26, 2017) ..................................................25, 30

*Robson Forensic, Inc. v. Shinsky*,
  2022 WL 1198228 (E.D. Pa. Apr. 22, 2022)......................................................17

*Rodriguez v. Canada Dry Bottling Co., L.P.*,
  2015 WL 5770502 (D.N.J. Sept. 30, 2015).......................................................10

*SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*,
  2012 WL 6565713 (N.J. Super. Ct. Ch. Div. Dec. 7, 2012)..................27, 29, 39

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
  2008 WL 2885887 (D.N.J. July 23, 2008) .......................................................24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*P.V. ex rel. T.V. v. Camp Jaycee,*
    962 A.2d 453 (N.J. 2008) ........................................................................25, 26, 29

*Tech Com, LLC v. Estep,*
    2022 WL 713439 (E.D. Ky. Mar. 9, 2022) ..................................................27, 35

*Voorhees v. Tolia,*
    2023 WL 4636738 (3d Cir. July 20, 2023)..............................................12, 13, 33

**Statutes**

Defend Trade Secrets Act ................................................................................*passim*

Kentucky Uniform Trade Secrets Act.............................................................*passim*

New Jersey Trade Secrets Act ........................................................................*passim*

**Other Authorities**

Federal Rules of Civil Procedure.......................................................................10, 37

Restatement (Second) of Conflict of Laws..................................................25, 29, 30

## **PRELIMINARY STATEMENT**

This case is not about protecting trade secrets. It is about stifling fair competition—and punishing employees for changing jobs. GE Appliances ("GEA") wants to stop Midea America Corp. ("Midea") from hiring talented engineers—engineers who, like any professionals, are free to pursue better opportunities. The two companies compete vigorously in the home-appliance industry. For years, that competition has extended beyond products to the recruitment of top engineering talent, especially in Louisville, Kentucky. Midea has succeeded in attracting skilled engineers, including former GEA employees, and GEA apparently does not welcome this competition. But instead of responding with better offers or incentives, GEA is trying to weaponize trade secrets law to lock out a rival—and lock in its workforce—by making baseless and conclusory allegations that have cast a cloud of suspicion over six professionals who have done nothing wrong.

GEA does not—and cannot—claim that any of these employees were bound by noncompete agreements. Yet GEA seeks to use trade secrets law to impose restrictions that are even more sweeping and indefinite than any enforceable noncompete. And it did not act when Midea hired the first of the six employees at issue back in December. Only months later—after the sixth hire—did GEA finally sue. But it did not sue in Kentucky, where both companies operate and all of the engineers work. Instead, GEA filed in New Jersey—where no relevant conduct

1

occurred—hoping to exploit New Jersey's "inevitable disclosure" doctrine, which Kentucky does not recognize.

The Court has already recognized that GEA's request for a temporary restraining order lacked merit. That ruling reflected the obvious: GEA delayed for months, failed to allege facts suggesting misappropriation, and offered nothing but conjecture. The same flaws doom the Complaint's request for a preliminary—and permanent—injunction. Indeed, the Complaint should be dismissed in full, and with prejudice.

First, GEA's federal Defend Trade Secrets Act ("DTSA") claim fails because the Complaint does not identify any trade secrets with enough specificity. It offers only vague, generic categories—exactly what courts have repeatedly found insufficient. Further, GEA utterly fails to plead any facts to support its claim that any information was unlawfully acquired, disclosed, or used. Everything GEA pleads is speculation based on "information and belief." It alleges no facts asserting actual or threatened misappropriation. That too is grounds for dismissal.

Second, GEA's state-law claims fail because GEA brings claims under the wrong state's laws. Under New Jersey's choice-of-law rules, the laws of Kentucky—where the former employees worked for GEA, where they currently work for Midea, and where the purported misappropriation occurred—govern, and Kentucky's Uniform Trade Secrets Act ("KUTSA") does not recognize "inevitable

disclosure" in trade secrets cases. GEA's state-law trade secret claim fails under the KUTSA for the same reasons its DTSA claim fails. And the KUTSA preempts GEA's remaining common-law claims, so those claims fail, too.

Finally, even if New Jersey law applied, the result is the same. While the "inevitable disclosure" doctrine can, in certain circumstances where there is threatened misappropriation, support a preliminary injunction, it does not excuse plaintiffs from sufficiently pleading misappropriation in the first instance. Thus, even under New Jersey law, GEA's New Jersey Trade Secrets Act ("NJTSA") and common-law misappropriation claims should be dismissed. GEA's tortious interference claim also fails because GEA does not allege any facts supporting a claim of malice. And GEA's unfair competition claim fails because it is duplicative of its tortious interference claim and because GEA has not alleged actual misappropriation or any facts demonstrating bad faith.

In sum, GEA's lawsuit is an attempt to turn trade secrets law into a categorical no-poaching agreement—and to punish employees for exercising their right to move forward in their careers. This Court should not allow it. The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Midea develops and markets a range of household appliances in the United States. (Compl. (ECF No. 1) ¶¶ 19–20.) Midea has a facility in Louisville,

Kentucky, where it conducts research and development to support its product innovation. (*Id.* ¶ 21.)  Louisville is also where GEA has its "headquarters and principal place of business." (*Id.* ¶ 17.)  Midea's Louisville facility—and six former GEA employees who now work there—are at the heart of the Complaint.[1]

GEA alleges that in October 2024, Midea expanded its Louisville facility by "some 400%" to "innovate and develop cutting-edge products" to compete with "market participants like [GEA] and others." (Compl. ¶ 21.)  To support this expansion, Midea allegedly hired six of GEA's Louisville-based employees (the "Former Employees") between December 2024 and March 2025. (*Id.* ¶¶ 7–10.)  Each of these employees worked for GEA in Louisville and now works for Midea in Louisville. (*See id.*, Exs. C, E, G, J, L, M (LinkedIn Profiles).)

According to GEA, the Former Employees "had access to and routinely used Company confidential and proprietary information and trade secrets," including "non-public invention disclosures, technologies and information, and pre-patent product development and innovations; processes, methods, means, and standards involved in the Company's innovation development programs, including without

---

[1] While Midea's corporate headquarters and "recruitment and human resources functions" are allegedly located in Parsippany, New Jersey (Compl. ¶ 19), all actions relevant to this dispute took place in Louisville, Kentucky.  GEA does not—and cannot—allege that any of the employees identified in its Complaint were recruited by anyone in New Jersey or otherwise had any connections with the Midea corporate headquarters in New Jersey.

limitation the Unlocking Innovation and Shark Tank Programs; research and development of new product designs and development; sales volume and projected sales volume; development and management of intellectual property; and, algorithms and evaluation procedures for testing products." (Compl. ¶ 32.) Aside from these generalities, however, the Complaint provides no further specificity regarding the trade secrets at issue, instead claiming that GEA "will provide a more specific list of trade secrets under appropriate confidentiality orders." (*Id.* n.1.) The remainder of the Complaint discusses the Former Employees' roles and knowledge but does not further specify any trade secrets. (*Id.* ¶¶ 36–89.)

While at GEA, each of the Former Employees allegedly executed an Employee Innovation and Proprietary Information Agreement ("EIPIA") with GEA. (Compl. ¶ 33; *see id.*, Ex. A.) The EIPIA required the employee to return "all items that belong to the Company" upon termination of employment, and prohibited using, disclosing, or removing any "secret, restricted, confidential or proprietary information or data of the Company." (*Id.* ¶ 34.) GEA claims that it asks all departing employees who signed the EIPIA to sign a "Reminder of Continuing Confidentiality and Intellectual Property Obligations" ("Reminder of Obligations"), which asks the employee to acknowledge he "read and understood" the EIPIA and that he had signed that document, and which invites the employee to contact certain personnel at GEA with any questions. (*Id.* ¶ 31.) It imposes no new obligations of

any kind beyond the already-executed EIPIA. (*See id.*) GEA concedes that upon departure, all Former Employees except James Armstrong signed the Reminder of Obligations (*id.* ¶ 35), and that Mr. Armstrong followed up to ask for a copy of his EIPIA (*id.* ¶ 44).[2]

The Complaint alleges Midea hired the Former Employees as part of an "apparent plan to secure the Company's confidential and proprietary information by simply hiring away" the Former Employees (Compl. ¶ 10), and that Midea is "intentionally targeting" the Former Employees "with the intent that they will disclose and use" GEA's trade secrets (*id.* ¶ 11). But the Complaint contains no non-conclusory allegations that Midea hired the Former Employees for any purpose other than their complementary skills and general engineering knowledge in the industry. Likewise, the Complaint does not allege that any of the Former Employees have violated the EIPIAs or acted inconsistently with their obligations. Instead, the Complaint merely speculates that the Former Employees are "likely to rely on, draw

---

[2] As GEA knows, Mr. Armstrong has since signed the document. However, the Court need not rely on this fact in resolving Midea's motion because the timing of Mr. Armstrong's acknowledgment of an existing contractual obligation cannot serve as the basis for GEA's misappropriation claim. (*See* Section I.B, *infra*.) Moreover, the Complaint alleges that Mr. Armstrong requested and received a copy of his signed EIPIA, which shows his awareness of his contractual obligations. The Reminder of Obligations asked for nothing more.

from, use, and disclose [GEA's] confidential and proprietary information and trade secrets in the performance of their duties, to Midea's benefit." (*Id.* ¶ 107.)

Strikingly, there are no allegations, for example, that GEA conducted an internal investigation of its IT systems and found evidence that the Former Employees engaged in suspicious behavior, or that the Former Employees failed to return their company-issued devices, or that the Former Employees made attempts to access GEA's IT systems or premises after their employment ended. There is no allegation that any of the Former Employees was anything other than forthcoming about the identity of Midea as his new employer. At best, GEA's allegations regarding Midea and the Former Employees are conclusory recitals of its causes of action. (*See* Compl. ¶¶ 102–39.)

Nearly three months after the first Former Employee's departure—and some five weeks after the fourth departure—GEA's counsel on March 5, 2025, purportedly "advised Midea of potential information security breaches and misappropriation of [GEA's] confidential business and trade secret information" resulting from Midea's hiring the Former Employees, and asked Midea to "take affirmative measures" to avoid accessing any trade secrets or confidential information. (Compl. ¶ 90.) GEA, however, did not identify any ***actual*** or ***threatened*** "information security breaches" or "misappropriation."

Soon after Midea's in-house counsel became aware of the issue, counsel for Midea and GEA engaged in discussions until April 21, 2025, when counsel for GEA threatened Midea with a complaint and application for temporary restraining order ("TRO"). (Compl. ¶¶ 91–97.) After further conversations, counsel for GEA gave Midea "24 hours in which to agree to provide" certain assurances and information. (*Id.* ¶ 99.) Midea's counsel responded promptly. (*See id.* ¶ 100.) Specifically, counsel for Midea stated, "[w]e have specifically spoken to the [Former Employees]" about Midea's trade secret policy, and each employee agreed that they "have not" and "will not" "bring, disclose to or use in connection with [their] employment at Midea any confidential information, including any confidential trade secrets, from any prior employer or other person or entity," under penalty of discipline, "up to and including termination." (Decl. of G. Kierkut, Ex. J (ECF No. 2-3).)[3] Midea's counsel further explained that "[w]e are conducting what we believe to be a reasonable search and have found no documents nor any other evidence of

_____

[3] The Court may consider this correspondence because it is specifically referenced in the Complaint (Compl. ¶ 100), was filed publicly on the docket by GEA in support of its TRO, and there is no dispute as to its authenticity—indeed, GEA's counsel has sworn to its authenticity (*see* Decl. of G. Kierkut (ECF No. 2-2)). *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating a court may consider "matters of public record," as well as "an undisputedly authentic document . . . if the plaintiff's claims are based on the document"); *Brusco v. Harleysville Ins. Co.*, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) (considering undisputedly authentic letter implicitly incorporated in complaint).

misappropriated GE trade secrets" and "Midea has no interest in and would reject out-of-hand any project or employee proposal that would constitute a misappropriation of trade secrets." (*Id.*) Apparently, Midea's response was not to GEA's liking.

On April 24, 2025, GEA proceeded to file the Complaint with this Court—rather than in Louisville, Kentucky, where all the alleged conduct took place—asking the Court to (1) impose six *de facto* noncompete agreements enjoining the Former Employees from working in any role in which they "will be likely to or inevitably have to use any of [GEA's] confidential, proprietary, or trade secret information or data in order to perform such role," (2) permit GEA to conduct expedited and invasive discovery, and (3) award GEA damages. (Compl. at 36–39, 41–43, 45–47, 50–52, 53–56.) At the same time, GEA filed an application for a TRO and an order to show cause, seeking to restrain Midea from using any confidential or proprietary information Midea obtained from the Former Employees, as well as seeking expedited discovery and a schedule to address a preliminary injunction. ([Proposed] Order To Show Cause with Temporary Restraints (ECF No. 2-4).)

On May 1, 2025, the Court denied the request for a TRO and expedited discovery. (Ltr. Order (ECF No. 7), at 1.) It noted that the Former Employees "left Plaintiff's employment more than one month ago" and "[t]here are not even

9

allegations that the GEA Trade Secrets have been disseminated." (*Id.*)  The Court

directed the parties to "proceed with regular motion practice." (*Id.*)

Midea now brings this motion to dismiss the threadbare, speculative, and

conclusory Complaint in its entirety.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "only a complaint that states

a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009).  "A complaint containing conclusory allegations without 'further

factual enhancement' will not survive a motion to dismiss, and 'where the well-

pleaded facts do not permit the court to infer more than the mere possibility of

misconduct,' as opposed to facts showing misconduct, the motion will be granted."

*Rodriguez v. Canada Dry Bottling Co., L.P.*, 2015 WL 5770502, at *2 (D.N.J.

Sept. 30, 2015) (quoting *Iqbal*, 556 U.S. at 678–79); *Microsoft Corp. v. Softicle.com*,

2018 WL 10150945, at *2 (D.N.J. Apr. 30, 2018) (explaining that a court is "under

no obligation" to accept conclusory allegations as true).

## ARGUMENT

The Complaint asserts a federal-law claim under the DTSA and several state-

law claims, all premised on the same alleged conduct:  Midea's hiring of the Former

Employees and the alleged misappropriation that will "inevitably" result therefrom.

But the Complaint fails to allege sufficient facts to support any of GEA's federal or state-law claims.

First, GEA's DTSA claim fails because it identifies only vague, generic categories of trade secrets that courts routinely reject as insufficient. In any event, GEA alleges no actual or threatened misappropriation. Its entire case rests on speculation and boilerplate allegations made on "information and belief," which do not satisfy federal pleading standards.

Second, GEA's state-law claims fail because GEA applies the wrong law. Under New Jersey's choice-of-law rules, Kentucky law governs—and Kentucky does not recognize inevitable disclosure. Further, GEA's misappropriation claim under Kentucky law fails for the same reasons as its DTSA claim, and its common-law claims are also preempted. Finally, even under New Jersey law, GEA's claims fall short. Inevitable disclosure is not a substitute for pleading misappropriation. GEA also fails to allege malice for tortious interference or bad faith for unfair competition.

## I.    THE COMPLAINT FAILS TO STATE A FEDERAL-LAW CLAIM UNDER THE DEFEND TRADE SECRETS ACT

Under the DTSA, a plaintiff must show, "(1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret."

11

*Beta Pharma, Inc. v. InventisBio (Shanghai) Co., Ltd.*, 2022 WL 17547265, at *3 (D.N.J. Dec. 8, 2022) (quoting *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019)).  GEA fails to plausibly allege either.

      **A.**     **The Complaint fails to allege the existence of a trade secret.**

"In any trade secret case, the Court must first determine whether there exists, in fact, a trade secret."  *Jiaherb, Inc. v. MTC Indus., Inc.*, 2023 WL 3249822, at *2 (D.N.J. May 4, 2023).  To plead the existence of a trade secret, a plaintiff must "sufficiently identify the information [it] claims as a trade secret and allege facts supporting the assertion that the information is indeed protectible as such."  *Voorhees v. Tolia*, 2023 WL 4636738, at *2 (3d Cir. July 20, 2023) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)).  Courts consider whether the allegations "provide Defendants notice to 'ascertain at least the boundaries within which the trade secret lies' and detail sufficient facts that allow the Court to infer a trade secret claim."  *Greenstar Techs., LLC v. Gouru*, 2025 WL 1311397, at *3 (D.N.J. May 5, 2025) (quoting *Oakwood Lab'ys*, 999 F.3d at 906).  "Generic allegations and general references to products or information are insufficient."  *Voorhees*, 2023 4636738, at *2 (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 n.24 (3d Cir. 2021)).

GEA identifies its purported "trade secrets" in a single paragraph of the Complaint, in which it lists the following "confidential and proprietary information

and trade secrets": "non-public invention disclosures, technologies and information, and pre-patent product development and innovations; processes, methods, means, and standards involved in the Company's innovation development programs, including without limitation the Unlocking Innovation and Shark Tank Programs; research and development of new product designs and development; sales volume and projected sales volume; development and management of intellectual property; and algorithms and evaluation procedures for testing products." (Compl. ¶ 32.)

Because that description identifies only "generic categories" and "general descriptions," and it does not even distinguish which information is a "trade secret" rather than "confidential and proprietary information," it is entirely deficient. *Greenstar Techs.*, 2025 WL 1311397, at *3 (finding "generic categories" like "AI applications and IOT technology," "revolutionary Communications Protocol" and "related software, applications, and data" insufficient). Courts have repeatedly found that such "wholly generic" allegations are insufficient. *Voorhees*, 2023 WL 4636738, at *2 (finding inadequate "wholly generic" allegations of "Augmented Reality for Education (AR4ED) software services," "AR worksheets and lessons," "information related to the concepts, ideas and products for . . . AR4ED," a "wearable display and App," "AR4ED worksheets and programs," "AR4ED worksheets and . . . Pear Imaginality Play and Create program," "ARworksheets and Imaginality Labs," "concepts, designs and future development strategies," "the Pear

13

Imaginality product," the "PEAR Imaginality platform," and "worksheets, animations and/or work product"); *see also Lithero, LLC v. AstraZeneca Pharms. LP*, 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) ("Plaintiff's complaint points to large, general areas of information that Plaintiff alleges to have shared with Defendant, but does not identify what the trade secrets are within those general areas."); *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, 2014 WL 1767471, at *8 (D.N.J. May 1, 2014) (analyzing NJTSA claim and concluding trade secrets were insufficiently pled where counter-claim defendant "obtained information concerning the sound rating and VOC content" of the manufacturer's "Eternity and Eternity SG products," as well as "information concerning other product specifications as well as the development, marketing and sale of the Eternity and Eternity SG products").

While courts recognize "the difficulty inherent in articulating what trade secrets Defendants may have appropriated," they have emphasized that "care must still be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be." *Greenstar Techs.*, 2025 WL 1311397, at *3 (quoting *Oakwood Lab'ys*, 999 F.3d at 907). Here, the categories of "confidential and proprietary information and trade secrets" alleged are so generic that Midea is left to guess what, if any, trade secrets it allegedly misappropriated. (*See* Compl. ¶ 32.)

14

GEA all but concedes that its identification of trade secrets is insufficient, noting that it "will provide a more specific list of trade secrets under appropriate confidentiality orders." (Compl. ¶ 32 n.1.) But the Complaint cannot survive a motion to dismiss based on this commitment to sufficiently identify GEA's trade secrets in the future.[4]

Even if the Court does find these generic categories of information sufficient to place Midea on notice as to what trade secrets are at issue (they are not), GEA makes no attempt to explain how the "information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The Complaint merely asserts conclusory allegations that its "trade secrets derive their competitive value from their secrecy." (Compl. ¶ 29; *see also id.* ¶ 105.) A "conclusory allegation that information is valuable to competitors and that [plaintiff] sought to keep that information secret does not confer trade secret status." *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *8 (S.D.N.Y. Mar. 28, 2025); *see Avataa*

---

[4] GEA's fixation on early discovery further demonstrates it cannot allege facts to state a claim. GEA controls the entirety of the work environments in which its Former Employees operated until the day each departed, along with the circumstances of their departure. If the Former Employees misappropriated any trade secrets, GEA should be able to describe what those secrets are by now. Instead, after more than four months, it still can do nothing more than speculate.

*USA, LLC v. Yaminsky*, 2025 WL 892716, at \*10 (D.N.J. Mar. 24, 2025) (finding that plaintiffs alleged their software had value but "not the trade secrets purportedly underlying [that product]," and an allegation that defendants were provided with confidential access to plaintiff's trade secrets to develop the software "does not articulate how the trade secrets have independent economic value"); *Jiaherb*, 2023 WL 3249822, at \*3 (finding complaint failed to allege how plaintiff's "trade secrets" were unique or different than others in the market and "conflate[d] routine business preferences with protectable trade secrets").

**B.    The Complaint fails to allege misappropriation.**

Even if GEA could identify trade secrets sufficiently to meet the pleading standard, the DTSA further requires sufficient allegations that a defendant misappropriated those trade secrets. *Beta Pharma*, 2022 WL 17547265, at \*3. GEA's Complaint fails to do so. "Misappropriation" is defined under the DTSA as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret." *Id.* (quoting 18 U.S.C. § 1839(5)). Taken together, the

16

DTSA "contemplates three theories of liability:  (1) acquisition, (2) disclosure, or (3) use."  *Id.*

The  Complaint  contains  nothing  more  than  conclusory  allegations  of acquisition, disclosure, or use by Midea.  The Complaint merely alleges that—"upon information  and  belief"—Midea  has  "acquired,  used,  and/or  disclosed,  and continues  to  acquire,  use  and/or  disclose,  [GEA's]  trade  secrets  without  [its] consent."  (Compl. ¶ 108.)  While GEA allegedly ***believe[s]*** [Midea] currently to be accessing and using" its trade secrets (*id.* ¶ 1 (emphasis added)), there are no allegations  of  actual  misappropriation  comprised  of  facts  or  any  other  asserted factual basis for GEA's purported belief.  *See Robson Forensic, Inc. v. Shinsky*, 2022 WL 1198228, at *5 (E.D. Pa. Apr. 22, 2022) ("[Plaintiff's]  purported belief that '[defendants]  have  already  misappropriated  [plaintiff's]  trade  secrets  and confidential  information,'  without  more,  does  not  carry  its  burden.").   Such "[t]hreadbare  recital  of  the  elements  of  a  cause  of  action,  supported  by  mere conclusory statements, do not suffice."  *Beta Pharma*, 2022 WL 17547265, at *2 (quoting *Iqbal*, 556 U.S. at 682).

Instead, the Complaint focuses on threatened misappropriation.  It claims— "upon information and belief"—that because Midea allegedly employs the Former Employees in positions similar to those they held at GEA, the Former Employees are  "likely  to  rely  on,  draw  from,  use,  and  disclose  [GEA's]  confidential  and

17

proprietary information and trade secrets in the performance of their duties, to Midea's benefit." (Compl. ¶ 107.)

This is pure speculation. There are no allegations that any of the Former Employees have taken any GEA documents or property with them or otherwise threatened to disclose any of GEA's purported "trade secrets." The Complaint alleges the Former Employees had knowledge of GEA's purported trade secrets, but the DTSA requires more. *See* 18 U.S.C. § 1836(b)(3)(A)(i)(I) (prohibiting courts from entering an order that would "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows").

To the extent GEA relies on its allegation that Mr. Armstrong did not immediately sign the Reminder of Obligations, that, too, is insufficient. (Compl. ¶¶ 43–46.) The Reminder of Obligations only "reminds the departing employee" of his obligations under the EIPIA. (*Id.* ¶ 31.) There is no dispute that Mr. Armstrong signed the EIPIA and is bound by that agreement. (*See id.* ¶¶ 33–34.) There is also no allegation that Mr. Armstrong repudiated his EIPIA obligations. To the contrary, the Complaint alleges that he asked for a copy of the document. (*Id.* ¶ 44.) The only reasonable inference to draw from Mr. Armstrong's asking for a copy of the EIPIA after leaving GEA is that he wanted to make sure he complied with his obligations.

18

Allegations that a single employee did not sign a non-binding document reminding him of his already existing contractual obligations during an exit interview cannot serve as the basis of a misappropriation claim.[5]

Nor is there any non-conclusory allegation that Midea has threatened to misappropriate GEA's purported trade secrets. The Complaint speculates that Midea has an "apparent plan to secure the Company's confidential and proprietary information by simply hiring away" the Former Employees (Compl. ¶ 10), and that Midea is "intentionally targeting" the Former Employees "with the intent that they will disclose and use" GEA's trade secrets (*id.* ¶ 11). But it is an unsupported leap in logic to assume that Midea hired the Former Employees to obtain GEA's trade secrets. The Complaint instead supports the conclusion that Midea is growing its business and seeking to hire quality employees with sound industry experience in a market where personnel with the relevant skills are in short supply. (*See id.* ¶¶ 7, 21.) There are no allegations that Midea hired exclusively from GEA or that it hired the employees only to compete with GEA. (*See id.* (alleging Midea expanded its Louisville plant "to compete with market participants like GE Appliances ***and others***" (emphasis added))). Nor are there allegations that any of the Former Employees hid the identity of Midea as their new employer or that Midea rapidly

---

[5] As GEA is aware, Mr. Armstrong has since signed the Reminder of Obligations, but the Court need not rely on this fact in resolving Midea's motion.

developed a competing product based on GEA's trade secrets. *Cf. Oakwood Lab'ys*, 999 F.3d at 907 (finding misappropriation properly pled based on the former employee's concealment of the new work he would be doing with the defendant, the former employee's lack of relevant expertise, and defendant's rapid success in developing technology that took plaintiff nearly 20 years to develop).

The only other alleged misconduct by Midea is its purported refusal to adequately respond to GEA's demands for information. The Complaint does not allege that Midea never responded. Rather, the Complaint takes issue with what it calls a "limited response, which provided certain information and assurances but not the full information and assurances [GEA] had requested." (Compl. ¶ 100.) Tellingly, the Complaint fails to give a single detail from the response, presumably because Midea's response included unequivocal assurances that each Former Employee was reminded of Midea's trade secret policy and that each Former Employee stated that they "have not" and "will not" use or disclose GEA's trade secrets under penalty of discipline "up to and including termination." (Decl. of G. Kierkut, Ex. J (ECF No. 2-3).) Failure to respond to a competitor's demands for information to that competitor's full satisfaction cannot serve as a basis for a claim of misappropriation.

Simply hiring GEA's employees, without more, describes "market competition," not misappropriation. *See Perimeter Sols. L.P. v. Fortress N. Am.*,

*LLC*, 2025 WL 553288, at *7 (E.D. Cal. Feb. 19, 2025) ("Seeking out a plaintiff's qualified former employee or contractor to develop competitive products with similar features does not constitute wrongful conduct, but instead describes a market competitor."). At best, the allegations are "consistent with" a "possible" theory of misappropriation. That is not enough. *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").

Courts routinely reject such "purely speculative" allegations, based "on information and belief," that an employee hired by a competitor has or will disclose trade secrets. *See, e.g.*, *Pittsburgh Logistics Sys. Inc. v. LaserShip, Inc.*, 2019 WL 2443035, at *11 (W.D. Pa. June 12, 2019) (dismissing DTSA claim where plaintiff "believe[d] and therefore aver[red]" that plaintiff's former Chief Information Officer "has or will use [plaintiff's trade secrets] for [defendant's] benefit in competition with [plaintiff]," even where plaintiff alleged the employee's "two positions are 'substantially similar' and that both involve 'developing and implementing new technologies, products and services'"). Indeed, courts reject such speculative allegations even when they are accompanied by allegations that the defendant developed a "similar product" shortly after a plaintiff's former employee started working for the defendant, allegations that are not present here. *See Perimeter Sols.*,

21

2025 WL 553288, at *7 (rejecting misappropriation allegations where the complaint alleged "a former employee of plaintiff started working for defendant, the same former employee contacted an engineer who formerly worked for plaintiff, and shortly thereafter defendant obtained preliminary approval of a product similar to plaintiff's product," finding "plaintiff's purported circumstantial allegations of wrongful conduct instead describe a market competitor"); *GMH Cap. Partners*, 2025 WL 950674, at *10 ("The Court finds that merely identifying [former employee] as a recipient of alleged trade secrets, identifying a three-month time period in which the information could have been shared, and plainly alleging that [a competitor's bid] could not have been possible without access to that information is purely speculative."); *Beta Pharma*, 2022 WL 17547265, at *3 (finding misappropriation implausible where plaintiff's patent lawyer allegedly disclosed trade secrets to defendant so that defendant could file its patent applications before plaintiff because the complaint "appears to only rely on [employee's] access to [plaintiff's] trade secrets").[6]

---

[6] In support of its DTSA claim, GEA does not argue that the Former Employees will "inevitably disclose" its trade secrets, instead discussing such theory only in connection with its NJTSA claim. (*See* Compl. ¶ 114.) That is because "inevitable disclosure" is a "state standard for granting preliminary injunctive relief," not for pleading a DTSA claim. *E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, 1991 WL 15296, at *8 (D.N.J. Feb. 5, 1991); *see, e.g.*, *IDEXX Lab'ys, Inc. v. Bilbrough*, 2022 WL 3042966, at *4–6 (D. Me. Aug. 2, 2022) (surveying case law and legislative history and concluding "based on the plain language of the statute, the inevitable disclosure

*    *    *

Finally, the Court should not expand trade secrets law so broadly as to suppress competition in the absence of a contractual agreement, especially "[g]iven the risk that trade secret claims can be misused for anti-competitive purposes." *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *11 (N.D. Cal. Mar. 17, 2020). That is particularly so where the injunctive relief that GEA seeks—which has no geographic or time limit—is even ***more restrictive*** than the types of noncompete agreements that courts permit under Kentucky and New Jersey law, which, among other things, require reasonable limits on duration and geographic scope. *See Lantech.com, LLC v. Yarbrough*, 2006 WL 3323222, at *1 (W.D. Ky. Nov. 14, 2006) ("Unreasonable covenants are overbroad in geographic scope or duration or do not protect any legitimate interest of the covenantee."); *Cmty. Hosp. Grp., Inc. v. More*, 869 A.2d 884, 897 (N.J. 2005) (analyzing a restrictive covenant's "duration, the geographic limits, and the scope of activities prohibited," each of which "must be narrowly tailored to ensure the covenant is no broader than necessary to protect the employer's interests").

---

doctrine does not apply to claims brought pursuant to DTSA"), *report & recommendation adopted*, 2022 WL 4940200 (D. Me. Oct. 4, 2022). In any event, such a theory is unsupported here. (*See* Section II.C.2, *infra*.)

Because GEA has not—and cannot—allege any actual or threatened misappropriation, GEA's DTSA claim suffers from incurable deficiencies and should be dismissed with prejudice. *Jiaherb*, 2023 WL 3249822, at *4 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002)).[7]

## II.    THE STATE-LAW CLAIMS ARE BROUGHT UNDER THE WRONG LAW AND, REGARDLESS, FAIL

GEA's state-law claims should be dismissed because, under New Jersey's choice-of-law rules, Kentucky law governs and requires dismissal. In any event, under New Jersey law, GEA's claims still fall short.

### A.    Kentucky law governs this dispute.

GEA brings four claims for violations of New Jersey statutory or common law. (Compl. ¶¶ 111–39.) However, all the relevant conduct at issue occurred in Kentucky. All Former Employees work in Kentucky. (*See id.*, Exs. C, E, G, J, L, M (LinkedIn Profiles).) Midea's Louisville plant is located in Kentucky, as is the GEA facility where the Former Employees worked, and GEA's "headquarters and

---

[7] Throughout the Complaint, GEA requests "expedited discovery" (Compl. at 37, 42, 46, 51, 54) and has already made a request for expedited discovery which this Court denied (Ltr. Order (ECF No. 7)). To the extent GEA asserts that it is still entitled to early discovery, the federal pleading rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *see Smith v. Lyons, Doughty & Veldhuius, P.C.*, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) ("Discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded.").

principal place of business" is located in Kentucky. (*Id.* ¶¶ 7, 17, 21.) And because the Former Employees are the alleged conduit for the trade secret misappropriation and other wrongful conduct, any alleged misconduct also occurred in Kentucky. Under dispositive authority applying New Jersey's choice-of-law rules, "[i]n determining the choice of law for trade secret cases, the place of alleged misappropriation is controlling." *Quintiles IMS Inc. v. Veeva Sys. Inc.*, 2017 WL 4842377, at *5 (D.N.J. Oct. 26, 2017). Kentucky's trade secrets law therefore applies and requires dismissal of GEA's trade secret and derivative common-law claims. The Court should reject GEA's forum shopping.

### 1.    New Jersey's choice-of-law framework.

"A federal court sitting in diversity applies the choice-of-law rules of the forum state—here, New Jersey—to determine the controlling law." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). Courts resolve choice-of-law issues at the motion to dismiss stage where further development of the record would not impact the choice-of-law analysis. *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *8–9 (D.N.J. Oct. 9, 2013). As relevant here, New Jersey follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws to resolve choice-of-law disputes. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). The first step of this two-part test is

to determine whether there is a conflict of laws. *Id.* When a conflict exists, the second step is to apply the relevant Restatement analysis. *Id.* at 461.

### 2. Kentucky and New Jersey trade secrets law conflict.

A conflict of laws exists where "application of the different state laws would lead to a different outcome in the case." *Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 231 (D.N.J. 2021). Material conflicts exist here regarding, at least, GEA's common-law claims and its inevitable disclosure theory under the NJTSA. *First*, under Kentucky law, GEA's common-law claims are preempted by the KUTSA. *Second*, while New Jersey courts have recognized an "inevitable disclosure" theory in connection with proving irreparable harm on a motion for preliminary injunction under the NJTSA, such a theory does not apply under Kentucky law.

#### a. The common-law claims are preempted under the KUTSA.

In Counts 3, 4, and 5 of its Complaint, GEA alleges common-law claims for tortious interference, misappropriation, and unfair competition premised on the same conduct alleged to support GEA's statutory claims—Midea's alleged hiring of the Former Employees and the alleged misappropriation "inevitably" resulting therefrom. (Compl. ¶¶ 118–39.)

The KUTSA "provides the only avenue for claims based on idea misappropriation in Kentucky." *Auto Channel, Inc. v. Speedvision Network, LLC*,

144 F. Supp. 2d 784, 790 (W.D. Ky. 2001). GEA's common-law misappropriation claim, therefore, is not available under Kentucky law. *See id.*; *Lewis v. Knight*, 2022 WL 2121517, at *2 (E.D. Ky. June 13, 2022) (noting Kentucky displaced common-law misappropriation claims in adopting KUTSA). Further, the KUTSA more broadly preempts noncontractual claims that "seek[] a remedy for the misappropriation of trade secrets." *Auto Channel*, 144 F. Supp. 2d at 789. This includes tortious interference and unfair competition claims, like GEA's, that are based on allegations of trade secret misappropriation. *See Tech Com, LLC v. Estep*, 2022 WL 713439, at *3 (E.D. Ky. Mar. 9, 2022) (finding unfair competition and tortious interference claims preempted).

In contrast, New Jersey law provides that the NJTSA is "in addition to and cumulative of any other right, remedy or prohibition provided under the common law or statutory law of this State." N.J.S.A. 56:15-9(a). Indeed, "New Jersey alone appears to have uniquely adopted" this language when adopting its version of the Uniform Trade Secrets Act. *SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*, 2012 WL 6565713 (N.J. Super. Ct. Ch. Div. Dec. 7, 2012). New Jersey courts have therefore allowed common-law claims to proceed alongside NJTSA claims. *See id.* (allowing common-law claims, including for misappropriation of confidential information, unfair competition, and tortious interference, to proceed alongside NJTSA claim).

Because GEA's common-law claims would be preempted under Kentucky law but not New Jersey law, the laws of Kentucky and New Jersey conflict.  *See Donovan*, 566 F. Supp. 3d at 231.

### b.    The inevitable disclosure doctrine is not recognized under Kentucky law.

Kentucky and New Jersey law also conflict because Kentucky does not recognize the doctrine of inevitable disclosure.  GEA's NJTSA claim, however, is premised on the theory that "it is inevitable that the [Former] Employees will rely on, draw from, and disclose [GEA's] confidential and proprietary information and trade secrets" while employed by Midea.  (Compl. ¶ 114.)

"The doctrine of inevitable disclosure has not been approved by any Kentucky court or the Sixth Circuit." *Invesco Institutional (N.A.), Inc. v. Johnson*, 500 F. Supp. 2d 701, 709 (W.D. Ky. 2007); *AWP, Inc. v. Safe Zone Servs., LLC*, 2022 WL 2910023, at *5–6 (W.D. Ky. July 22, 2022) (concluding KUTSA claim was objectively specious where "Kentucky courts have been silent" on the theory of inevitable disclosure and even if available, plaintiff "merely allege[d] 'the existence of generalized trade secrets' and then relie[d] on the fact that the Former Employees, who purportedly have knowledge of these trade secrets, now work for" defendant).

In contrast, courts in New Jersey have recognized an inevitable disclosure theory, at least in analyzing "those misappropriation claims through which a plaintiff seeks injunctive relief." *Osteotech, Inc. v. Biologic, LLC*, 2008 WL 686318, at *3–

28

4 (D.N.J. Mar. 7, 2008) (reliance on inevitable disclosure is "appropriate to the extent it may be used to show irreparable harm"); *see SCS Healthcare Mktg.*, 2012 WL 6565713 (describing inevitable disclosure as "a factor guiding [New Jersey courts'] determination as to whether injunctive relief is appropriate"); *cf. Osteotech*, 2008 WL 686318, at *4 (concluding misappropriation claim survived a Rule 12(c) motion because it was based on "factual allegations supporting an indication that Defendants did actually use misappropriated trade secrets," rather than applying inevitable disclosure).

Because GEA's inevitable disclosure theory is recognized under New Jersey law but not Kentucky law, there is a conflict.[8]  *See Donovan*, 566 F. Supp. 3d at 231.

### 3.    The Court should resolve GEA's claims under Kentucky law.

Because New Jersey law conflicts with Kentucky law, the Court must determine which state has the most significant relationship with the claims.  *Camp Jaycee*, 962 A.2d at 461.  For tort claims, courts look to section 145 of the Restatement (Second) of Conflict of Laws to determine which forum has the most significant relationship.  *See id.* at 460; *Donovan*, 566 F. Supp. 3d at 234.

---

[8] To be clear, New Jersey's inevitable disclosure doctrine is contained to the preliminary injunction context, but in the event the Court finds it applicable in pleading misappropriation at the motion to dismiss phase, New Jersey law would conflict with Kentucky law and would require the Court to apply Kentucky law.

Relevant factors under section 145 include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145. Fundamentally, under New Jersey's choice-of-law rules, "[i]n determining the choice of law for trade secret cases, the place of alleged misappropriation is controlling." *Quintiles*, 2017 WL 4842377, at *5; *see* Restatement (Second) of Conflict of Laws § 145 cmt. f ("[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from . . . the misappropriation of trade values.").

Applying the Restatement factors here, Kentucky law clearly applies over New Jersey law. GEA does not allege any connection to New Jersey other than postulating, with no support or justification, that "[u]pon information and belief, Midea's recruitment and human resources functions are carried out from its Parsippany, New Jersey location" and a boilerplate jurisdictional allegation that "upon information and belief, the claims asserted herein arise out of the acts and omissions of the Defendant committed in the States [sic] of New Jersey." (Compl. ¶¶ 19, 23.) But as GEA's Complaint and exhibits thereto demonstrate, GEA's

corporate headquarters, Midea's Louisville plant, and all of the Former Employees are in Kentucky. (*See id.* ¶¶ 17, 21; *id.*, Exs. C, E, G, J, L, M (LinkedIn Profiles).)

Tellingly, though GEA has failed to plausibly allege that Midea has misappropriated any GEA trade secrets (*see* Section I.B, *supra*), it does not even ***attempt*** to assert non-conclusory allegations that any misappropriation has taken place in New Jersey. *See NXIVM Corp. v. Estate of Sutton*, 2013 WL 6795217, at *4 (D.N.J. Dec. 19, 2013) (concluding New York trade secrets law applied over New Jersey where individual defendant's "alleged signing of the contract with [plaintiff] took place in New York, she received the course materials she allegedly appropriated in New York, her relationship with [plaintiff] is centered on the classes she took in New York, and she allegedly injured a company that has its principal place of business in New York").

## B. Under the laws of both Kentucky and New Jersey, GEA's conclusory Complaint fails to state a claim.

Regardless of how this Court resolves the conflict of laws issue presented by GEA's forum shopping, the Complaint should be dismissed for failure to state a claim. Under governing Kentucky law, GEA's claims fail: GEA's misappropriation theory is not a basis for liability under the KUTSA, and the KUTSA preempts all of GEA's common-law claims. But even if this Court applies New Jersey law to GEA's state-law claims, it should dismiss the Complaint in its entirety for failure to state a claim.

31

C.    **State-Law Misappropriation Claims (Counts 2 & 4)**

1.    **Under Kentucky law, this Court must dismiss GEA's misappropriation claims.**

At the outset, given that Kentucky law governs, GEA's NJTSA claim "should be dismissed because it is alleged under the wrong state's trade secrets statute." *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 261–62 (S.D.N.Y. 2020); *see, e.g.*, *Henessey Food Consulting LLC v. Prinova Sols., LLC*, 2024 WL 4291312, at *6 (N.D.N.Y. Sept. 24, 2024) (dismissing misappropriation claim brought under New York law because Illinois law applied). But even if the Court does not dismiss on that basis, GEA has not stated misappropriation claims under Kentucky law.

*First*, as discussed above (Section II.A.2.b, *supra*), the inevitable disclosure theory on which GEA's state-law misappropriation claim is premised is not available under Kentucky law. Courts analyze DTSA and KUTSA claims together. *Allstate Ins. Co. v. Hamm*, 2020 WL 1431953, at *14 (E.D. Ky. Mar. 23, 2020). Thus, GEA's claim under the KUTSA fails for the same reasons as the DTSA claim. (*See* Section I, *supra*.)

*Second*, GEA's common-law misappropriation claim is duplicative of its statutory claim and must be dismissed regardless of GEA's theory of liability. *Auto Channel*, 144 F. Supp. 2d at 789 (KUTSA "provides the only avenue for claims based on idea misappropriation in Kentucky").

32

### 2.    GEA's misappropriation claims still fail under New Jersey law.

New Jersey courts have recognized that "our analysis of the DTSA also applies to the plaintiff's claims under the NJTSA." *Voorhees*, 2023 WL 4636738, at *2 n.4 (quoting *Oakwood Lab'ys*, 999 F.3d at 905 n.11).  Both require a plaintiff to demonstrate (1) the existence of a trade secret and (2) misappropriation of that trade secret.  *See Jiaherb*, 2023 WL 3249822, at *2.  A common-law misappropriation claim in New Jersey similarly requires (1) the existence of a trade secret; (2) communicated in confidence by plaintiff to the employee; (3) disclosed by the employee in breach of that confidence; (4) acquired by a competitor with knowledge of the employee's breach; (5) used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 771 (D.N.J. 2013).  Thus, even if the Court finds New Jersey law applies, it should dismiss these claims for the same reason as the DTSA claim.  (*See* Section I, *supra*.)

Reliance on the "inevitable disclosure" doctrine cannot save the Complaint. *First*, the doctrine is inapplicable to this motion.  The doctrine "sets forth a state standard for granting preliminary injunctive relief," not for pleading a misappropriation claim. *E.R. Squibb & Sons*, 1991 WL 15296, at *8; *see Osteotech*, 2008 WL 686318, at *3–4 (reliance on doctrine is "appropriate to the extent it may be used to show irreparable harm"); *PetroChoice Holdings, Inc. v. Orobono*, 2022

WL 138008, at *4 n.9 (E.D. Pa. Jan. 14, 2022) ("[The inevitable disclosure] doctrine governs preliminary injunctions where there is a threatened misappropriation of trade secrets . . . it is not an evidentiary presumption or a mandatory adverse inference that relieves a plaintiff of its burden to prove that actual misappropriation of trade secrets occurred.").

*Second*, even if applicable (it is not), the inevitable disclosure doctrine cannot save otherwise conclusory and speculative allegations. *See, e.g.*, *Koger, Inc. v. Klco*, 2009 WL 905061, at *5 (D.N.J. Mar. 9, 2009) (allegations that "it is 'inevitable' that a particular employee, in his or her new employment, 'will make disclosure and use of [plaintiff's] confidential and proprietary information'" fail to "raise the right to relief above the speculative level"); *Marina Distr. Dev. Co. v. AC Ocean Walk, LLC*, 2020 WL 5502160, at *6 (D. Nev. Sept. 10, 2020) (analyzing NJTSA and concluding that "[m]ere similarity of employment does not establish threatened misappropriation" and finding allegations that former employee "will inevitably use or disclose Plaintiff's [alleged trade secrets] while working for [defendant] unconvincing; the claim is based only on conclusory allegations").

### D.    Tortious Interference (Count 3)

GEA alleges in Count 3 that Midea has tortiously interfered "with contractual relations and prospective economic advantage." (Compl. at 43.) As discussed above (*see* Section II.A.2.a, *supra*), Kentucky law applies to this claim, and the Court

should dismiss it because it is preempted by the KUTSA.  *E.g.*, *Tech Com*, 2022 WL 713439, at \*3.  But even if the Court were to apply New Jersey law, GEA's claim still fails.

Under New Jersey law, interference with "contractual relations" and "prospective economic advantage" are distinct torts.  *See Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, 2022 WL 17132156, at \*5 (D.N.J. Nov. 22, 2022).  Alleged wrongful interference with an at-will employment relationship "is generally construed as tortious interference with a prospective economic relationship." *Id.* at \*4.  Here, GEA alleges that by hiring the Former Employees, Midea interfered with GEA's (1) EIPIAs and (2) "employment relationships" with the Former Employees.  (Compl. ¶¶ 119–22.)

To prevail on a tortious interference claim under New Jersey law, a plaintiff must prove four elements:  (1) plaintiff must have a "protected interest"; (2) defendant must have behaved with "'malice'—that is, defendant must have intentionally interfered with that protected interest without justification"; (3) "there must be a reasonable likelihood that the anticipated benefit from the protected interest would have been realized but for the interference"; and (4) "economic damage must have resulted." *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 575 (D.N.J. 2010).

35

Because only wrongful interference is actionable, a plaintiff must show "malice or wrongful conduct." *Micro Image Techs.*, 2022 WL 17132156, at *4–5 (in this context, "malice" refers to "conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage"); *see Avtec Indus., Inc. v. Sony Corp. of America*, 500 A.2d 712, 715–17 (N.J. Super. Ct. App. Div. 1985) (no malice where parties "were clearly competing for skilled technicians from the same labor pool," defendant's "purpose was clearly to advance its own interest in hiring competent employees," and means were not wrongful).

Both theories of tortious interference fail because GEA has not plausibly alleged malicious interference.  GEA has alleged no facts to substantiate the conclusory allegation that Midea wrongfully interfered, and the Court need not accept GEA's conclusory assertions that Midea hired the Former Employees "for the purpose of inducing [them] to breach their EIPIAs" and that "Midea's interference . . . was and continues to be malicious."  (Compl. ¶¶ 121–22); *see Cardionet, Inc. v. Medi-Lynx Cardiac Monitoring, LLC*, 2016 WL 4445749, at *2–3 (D.N.J. Aug. 22, 2016) (dismissing tortious interference claim where plaintiffs alleged defendants intentionally hired plaintiffs' "experienced technical employees who had already been trained and developed by Plaintiffs" but failed to allege facts showing defendants acted with malice).

36

The theory of tortious interference with contractual relations fails for two additional reasons.  *First*, the Complaint contains no factual allegations that the Former Employees have ***actually breached*** the EIPIAs.  This is fatal, because actual breach is a required element of this claim.  *See DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 566 (D.N.J. 2002) (under New Jersey law, this "cause of action requires a failure to perform"); *Lento v. Altman*, 2023 WL 4232158, at *12 (D.N.J. June 27, 2023) ("[Plaintiffs] do not plead actual losses or broken contracts.  Plaintiffs just conclude on their own right that this might happen at some point.").[9]

*Second*, the Complaint contains no non-conclusory allegations that Midea even knew of the EIPIAs between GEA and the Former Employees at the times of their hiring, which is also a required element under New Jersey law.  *See Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013) (stating actual knowledge is prerequisite under New Jersey law).

### E.    Unfair Competition (Count 5)

GEA makes one final attempt to extract relief to which it is not entitled by alleging that the "inevitable disclosure" of GEA's "secret, restricted, confidential or proprietary information" due to Midea's hiring of the Former Employees "is

---

[9] To the extent GEA is proceeding on a theory of "fraud," which it asserts in conclusory fashion in two paragraphs of the Complaint (*see* Compl. ¶¶ 113, 130), GEA has failed to "state with particularity the circumstances constituting fraud" as required by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b).

contrary to the notion of free competition that is fair." (Compl. ¶ 138.) GEA's unfair competition claim must be dismissed because "to the extent . . . unfair competition claims sound[] in the misappropriation and use of trade secrets, they are preempted by the KUTSA." *Cmty. Ties of America, Inc. v. NDT Care Servs., LLC*, 2015 WL 520960, at *19 (W.D. Ky. Feb. 9, 2015); (*see* Section II.A.2.a, *supra*).

Even under New Jersey law, GEA's unfair competition claim fails for the same reasons as its other, wholly speculative claims. *First*, the claim is duplicative of GEA's tortious interference claim. (*See* Compl. ¶¶ 118–26 (alleging tortious interference based on existence of EIPIAs, recruitment of Former Employees, and their employment in roles that will allow Midea to gain improper competitive advantage through disclosure of GEA information); *id.* ¶¶ 134–39 (same).) "[U]nder New Jersey law, 'there is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action.'" *Diversified Indus.*, 2014 WL 1767471, at *6 (quoting *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. Ch. Div. 1989)). Thus, "courts have dismissed unfair competition claims where they are duplicative of claims for tortious interference." *Id.* (collecting New Jersey case law).

*Second*, "[a]lthough New Jersey's unfair competition law is 'flexible and elastic,' it is 'not completely boundless.'" *Jevremovic v. Courville*, 2024 WL 4024144, at *10 (D.N.J. Aug. 30, 2024) (quoting *Duffy v. Charles Schwab & Co.*,

123 F. Supp. 2d 802, 815 (D.N.J. 2000)).  "A plaintiff asserting an unfair competition claim must allege two essential elements: (1) 'the misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value'; and (2) 'bad faith or malicious conduct.'"  *Id.* (alteration in original) (quoting *Harish v. Rubinstein*, 602 F. Supp. 3d 696, 703 (D.N.J. 2022)); *see Paramount Residential Mortg. Grp., Inc. v. Nationwide Mortg. Bankers, Inc.*, 2024 WL 2764821, at *3–4 (D.N.J. May 30, 2024) (noting that New Jersey unfair competition claims are thus far limited to "three broad categories" encompassing "passing off" another's goods or services as one's own, unprivileged imitation, and tortious interference).

While GEA's allegations of Midea's purported bad faith are mere speculation unsupported by facts (*see* Section II.D, *supra*), its claim fails for a more fundamental reason:  GEA has not alleged misappropriation, the "key to the tort of unfair competition."  *Harish*, 602 F. Supp. 3d at 703 (quoting *Hoffman-La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999)).  Instead, GEA merely alleges that "inevitable disclosure and use of [its] secret, restricted, confidential or proprietary information to Midea is contrary to the notion of free competition that is fair."  (Compl. ¶ 138.)  This Court should decline GEA's invitation to completely untether the inevitable disclosure doctrine from its function as, at most, "a factor guiding the court's determination as to whether injunctive relief is appropriate."  *SCS Healthcare Mktg.*, 2012 WL 6565713.  Because GEA has failed to allege that Midea

has misappropriated GEA's property, its unfair competition claim lacks an "essential element" and must be dismissed. *See Jevremovic*, 2024 WL 4024144, at *10; *Paramount Residential Mortg. Grp.*, 2024 WL 2764821, at *6.

## CONCLUSION

GEA's lawsuit is built on conjecture, not facts. It speculates about future misuse of unidentified information but offers no factual allegations of wrongdoing by Midea or the Former Employees. None of the Former Employees were subject to a noncompete. None are accused of taking documents, violating agreements, or hiding their employment. Yet GEA would have this Court sideline their careers indefinitely based on their decisions to work for a competitor. GEA's decision to file this action in New Jersey—far from the people, conduct, and operations involved—only underscores the strategic nature of this case.

GEA's reliance on speculation rather than facts dooms its legal claims. The DTSA count fails because GEA does not sufficiently identify any trade secrets or allege unlawful disclosure, acquisition, or use. Its state-law claims are governed by Kentucky law, which forecloses "inevitable disclosure" and preempts overlapping tort claims. And even if New Jersey law applied, GEA has not pled the basic facts required to support its claims. The Complaint should be dismissed with prejudice.

Dated: May 21, 2025                    **COOLEY LLP**

                                       By: */s/ Brian P. Golger*
                                           Brian P. Golger
                                           (N.J. Attorney No. 348742021)

                                       Philip M. Bowman (*pro hac vice*)
                                       55 Hudson Yards
                                       New York, NY 10001-2157
                                       Telephone: (212) 479-6000
                                       Email: bgolger@cooley.com
                                               pbowman@cooley.com

                                       Mark F. Lambert (*pro hac vice*)
                                       Amanda A. Main (*pro hac vice*)
                                       3175 Hanover Street
                                       Palo Alto, CA 94304-1130
                                       Telephone: (650) 843-5000
                                       Email: mlambert@cooley.com
                                               amain@cooley.com

                                       William K. Pao (*pro hac vice*)
                                       Wells Fargo Center, South Tower
                                       355 South Grand Avenue, Suite 900
                                       Los Angeles, CA 90071-1560
                                       Telephone: (213) 561-3250
                                       Email: wpao@cooley.com

                                       *Counsel for Defendant Midea America
                                       Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed with the Clerk of the Court

for the United States District Court, District of New Jersey, via the CM/ECF system,

and will be served electronically on registered participants.


Dated: May 21, 2025                     **COOLEY LLP**

                                        By: */s/ Brian P. Golger*
                                        Brian P. Golger
                                        (N.J. Attorney No. 348742021)
                                        55 Hudson Yards
                                        New York, NY 10001-2157
                                        Telephone: (212) 479-6000
                                        Email: bgolger@cooley.com

                                        *Counsel for Defendant Midea America
                                        Corp.*

42